**[J-78-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 730 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated July 22, |
| | : | 2016 in the Court of Common Pleas, |
| | : | Philadelphia County, Criminal Division |
| v. | : | at No. CP-51-CR-0902431-1996. |
| | : | |
| | : | SUBMITTED: September 29, 2017 |
| WILLIAM RIVERA, | : | |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: December 28, 2018**

William Rivera appeals from the order of the Court of Common Pleas of Philadelphia County denying his petition for relief from his death sentence, filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§9541–9546, following an evidentiary hearing limited to one issue — whether penalty phase counsel was ineffective for failing to present mental health and life history mitigation evidence. For the reasons set forth below, we affirm.

We summarized the facts leading to appellant's conviction in our opinion on direct appeal affirming appellant's sentence of death. *Commonwealth v. Rivera*, 773 A.2d 131 (Pa. 2001) (*Rivera I*). Relevant to the current appeal is the following background.

Appellant and his co-defendants, Robert Ortiz-Bonilla and Luis Centeno, were charged with homicide, robbery, criminal conspiracy, and related crimes in connection with the September 25, 1995, carjacking and murder of Tae Hung Kang (victim). Prior to trial, appellant's counsel filed and litigated a motion to suppress appellant's statement to detectives in which he admitted shooting the victim. The basis of the motion was detectives were aware appellant had retained counsel in another criminal case, but questioned him without informing that attorney. Although appellant was not colloquied regarding whether he wished to testify at the suppression hearing, Attorney Thomas McGill (guilt phase counsel) informed the court he had urged appellant to testify, but appellant refused. N.T. 1/23/98 at 3-4, 57-58. Based on this refusal, guilt phase counsel requested and was granted an immediate psychiatric evaluation to determine whether appellant was competent to stand trial. After the evaluation, Dr. Robert Stanton opined appellant was competent, N.T. 1/30/98 at 3, and after colloquy of appellant, the court determined appellant was competent to proceed. N.T. 1/23/98 at 10-13. The suppression motion was ultimately denied.

A panel of potential jurors was selected using a list of Philadelphia citizens who were either registered to vote or licensed to drive. During jury selection, the trial court questioned potential jurors regarding their views on the death penalty and whether those views would prevent them from imposing the death penalty, if appropriate. The trial court dismissed a number of jurors for cause without individual questioning based on their affirmative response to the question "[i]s there anyone here who would be unable for any reason, to impose a death sentence?" N.T. 1/26/98 at 23-28; N.T. 1/27/98 at 12-26, 145-49; N.T. 1/28/98 at 23-28. The trial court also dismissed for cause two potential jurors, Sandra Taylor and Cynthia Alexander, who were individually questioned and stated they would be uncomfortable imposing a death sentence. N.T.

1/26/98 at 44-46 (Taylor), 165-67 (Alexander). The prosecutor used 18 of 21 allotted peremptory challenges: eight to strike Caucasians; eight to strike African-Americans; one to strike a Hispanic person; and one to strike a person who identified her race as other. PCRA Court Op. at 38-39. The final jury included six African Americans, five Caucasians, and one juror who identified her race as other. *Id.* at 39.

Dr. Gregory McDonald, who performed the autopsy of the victim, was unavailable to testify at trial so Dr. Ian Hood, who was not present during the autopsy, testified as to Dr. McDonald's findings. Dr. Hood testified the victim had four gunshot wounds: one to the right hand from close range; one to the upper left chest near the collarbone; one to the upper left chest near the nipple; and another to the upper chest. N.T. 1/30/98 at 78-80. Dr. Hood further testified the bullets went "almost straight backwards, a little rightwards, and a little upwards," and the victim's chin and lower lip displayed some soot and gunpowder stippling. *Id.* at 80-81. Furthermore, there were differing accounts from witnesses and appellant's own statement regarding whether appellant shot the victim while he was still inside the vehicle or during a struggle which occurred outside the vehicle.

During closing arguments for the guilt phase, the prosecutor argued Lisa Woods, a Commonwealth witness who was unable to recall the incident during her trial testimony, had blocked the "horrific events" out of her mind, and that Eric Williams, a Commonwealth witness who had identified appellant as the shooter in the past, but identified co-defendant Centeno as the shooter at trial, was better able to identify the shooter closer to the incident. N.T. 2/2/98 at 73. The prosecutor also relied on Dr. Hood's statement the bullets went rightwards to argue appellant shot the victim while he was still seated in the vehicle. *Id.* at 75-76. The prosecutor further stated a person who

brings a loaded gun to a robbery is prepared to kill by any means necessary. *Id.* at 81-83. The jury ultimately convicted appellant of first-degree murder.[1]

At the penalty phase proceeding, the guilt phase testimony was incorporated at the request of the prosecutor. Attorney Norman Scott (penalty phase counsel) stipulated to appellant's juvenile record which included a robbery committed using a screwdriver as a weapon. Dr. William F. Russell, a forensic psychologist, testified on appellant's behalf. Using information supplied by penalty phase counsel, Dr. Russell testified appellant's "traumatic, uncontrolled, unstructured life" along with his low IQ, and the trauma of witnessing his mother's murder, all led to his inability to cooperate with counsel and control his aggressive actions. N.T. 2/5/98 at 34-37, 40, 47. During closing arguments, the prosecutor, referencing appellant's past crimes, remarked appellant's level of violence escalated as he got older. N.T. 2/5/98 at 57. The jury unanimously found the aggravating factor of the killing being committed during the perpetration of a felony, 42 Pa.C.S. §9711(d)(6), outweighed the catch-all mitigating circumstance, 42 Pa.C.S. §9711(e)(8), and sentenced appellant to death.[2]

On appellant's direct appeal, which preceded *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), he was represented by new counsel, and this Court afforded appellant unitary review of claims of trial court error as well as claims of guilt phase counsel's ineffectiveness during the guilt and penalty phases.[3] Ultimately, we affirmed the

---

[1] Co-defendant Ortiz-Bonilla was found guilty of second degree murder and sentenced to life imprisonment while co-defendant Centeno was acquitted of all charges. There are no issues in this appeal regarding the co-defendants.

[2] The jury rejected the Commonwealth's assertion of the applicability of the grave risk of death to another person aggravator, 42 Pa.C.S. §9711(d)(7), and significant history of violent felony convictions aggravator, 42 Pa.C.S. §9711(d)(9), as well as appellant's assertion of the age mitigator, 42 Pa.C.S. §9711(e)(4).

[3] Before *Grant*, this Court required new counsel to raise claims of previous counsel's ineffectiveness at the first opportunity after new counsel entered the case, which was (continued…)

judgment of sentence, holding the evidence at trial was sufficient to uphold appellant's first-degree murder conviction, *Rivera I*, 773 A.2d at 135-37, and appellant's petition for writ of *certiorari* to the United States Supreme Court was denied. *Rivera v. Pennsylvania*, 535 U.S. 955 (2002).

Appellant filed a timely *pro se* PCRA petition in 2002, which was assigned to the trial judge, Judge Gary Glazer. A counseled amended PCRA petition was subsequently filed and the PCRA court entered a notice of dismissal pursuant to Pa.R.Crim.P. 909 on May 14, 2004. The court then dismissed the petition on June 3, 2004, which was the twentieth day after the notice of dismissal but still within the time period under Rule 909 during which appellant could file a response to the proposed dismissal. Appellant challenged the dismissal and, based on the PCRA court's failure to give appellant the full twenty days to respond to its notice of dismissal, this Court vacated the dismissal and remanded the case to the PCRA court for further proceedings. *Commonwealth v. Rivera*, 65 A.3d 290 (Pa. 2013) (*Rivera II*). The PCRA court then granted a three-day evidentiary hearing limited to the issue of whether penalty phase counsel was ineffective for failing to develop and present mental health and life history mitigation evidence.

During the evidentiary hearing, appellant presented the testimony of both guilt phase counsel and penalty phase counsel. Guilt phase counsel testified he had no recollection of penalty phase counsel's work on appellant's specific case, but in his

---

(…continued)
often on direct appeal. *See Commonwealth v. Hubbard*, 372 A.2d 687 (Pa. 1977). This rule was subsequently abrogated in *Grant*, which held claims of ineffective assistance of counsel generally should be deferred until collateral review. *Grant*, 813 A.2d at 738 (overruling *Hubbard*). Thus, in direct appeals decided prior to *Grant*, new counsel on appeal was obligated to raise claims of guilt phase counsel's ineffectiveness or risk having them later be deemed waived on PCRA review.

experience, it was penalty phase counsel who would normally collect all records pertaining to a defendant's childhood, including educational records and Department of Human Services (DHS) records. N.T. 11/16/15 at 95-101. Penalty phase counsel testified he had no recollection of whether he interviewed the man who murdered appellant's mother and did not remember if he provided Dr. Russell with DHS and educational records in this case, but it would have been his usual practice to do so. *Id.* at 25-26. Both guilt phase counsel and penalty phase counsel testified appellant was uncooperative during their preparation for trial and the penalty phase. *Id.* at 27, 47-48 (penalty phase counsel), 115-126 (guilt phase counsel). Edwin Dejesus (mother's murderer) also testified, stating appellant (who was then five years old), observed his mother's dead body just after he shot her. *Id.* at 139.

In addition, appellant presented the expert testimony of Dr. Russell and neuropsychologist Dr. Carol Armstrong. Dr. Russell testified he did not have enough information regarding appellant's background at the time of the penalty phase hearing and, only after receiving extensive materials prior to the PCRA hearing, was able to diagnose appellant with attachment disorder, post-traumatic stress disorder, and a severe learning disability. *Id.* at 15-42. Given this new information, Dr. Russell testified appellant was under extreme emotional disturbance at the time of the murder and was unable to conform his conduct to the requirements of the law. *Id.* at 44-45. On cross-examination, however, Dr. Russell stated the paperwork previously provided by penalty phase counsel contained much of the same information provided by PCRA counsel. *Id.* at 80-84.

Dr. Armstrong testified, based on her tests and examinations of appellant, he suffered from extreme mental and emotional distress caused by brain damage and cognitive impairment, most likely resulting from the extremely unhealthy and

unstructured environment in which he grew up. *Id.* at 158-159. Dr. Armstrong further testified those impairments substantially diminished appellant's ability to conform to the requirements of the law. *Id.* at 159. In response, the Commonwealth presented psychiatrist Dr. John O'Brien, who offered expert testimony that his testing and evaluation of appellant revealed an educational deficiency but no brain damage of any kind. *Id.* at 193. Dr. O'Brien also opined appellant was not suffering from extreme mental and emotional disturbance at the time of the offense and instead chose not to conform his conduct to the requirements of the law. *Id.* at 236. Dr. O'Brien further stated the additional documentation of appellant's background provided to Dr. Russell by PCRA counsel was cumulative of the information in the juvenile file, which was available at the penalty phase. *Id.* at 199.

The PCRA court determined penalty phase counsel's assistance was reasonable and satisfied the constitutional threshold as Dr. Russell was provided with enough information to provide a persuasive opinion and penalty phase "[c]ounsel's investigation and presentation would have undoubtedly been more thorough and effective had [appellant] not been uncooperative and actively undermined counsel's efforts." PCRA Court Op. at 26. The court further concluded appellant failed to show prejudice. The PCRA court credited Dr. O'Brien's testimony and did not deem credible the contrary testimony of Drs. Russell and Armstrong. *Id.* at 28-31. Accordingly, the court dismissed the petition. On direct appeal[4] to this Court, appellant raises eleven principal claims to which the PCRA court prepared a Pa.R.A.P. 1925(a) opinion addressing those claims.[5]

---

[4] Appeals from the denial of PCRA relief in cases in which the death penalty has been imposed are directly appealable to this Court. *See* 42 Pa.C.S. §9546(d).

[5] Appellant's issues on appeal are ordered as follows: (1) prior counsel failed to reasonably investigate, develop and present evidence of appellant's mental health and life history mitigation at the penalty phase; (2) the trial court erred by failing to instruct the jury appellant would not be eligible for parole if sentenced to life imprisonment and (continued…)

## I. Review Standards

We review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. *Commonwealth v. Blakeney*, 108 A.3d 739, 748-49 (Pa. 2014), *citing Commonwealth v. Spotz*, 47 A.3d 63, 75 (Pa. 2012). Our standard of review regarding a PCRA court's legal conclusions is *de novo. Id.* at 749.

To be entitled to PCRA relief, appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. §9543(a)(2). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* Appellant must also show his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. §9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." 42

---

(…continued)
counsel were ineffective for failing to raise the issue; (3) prior counsel failed to reasonably investigate, develop and present evidence of appellant's mental state defenses at trial; (4) appellant was denied an impartial sentencing jury and counsel were ineffective for failing to raise the issue; (5) appellant was denied his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986) and counsel were ineffective for failing to raise the issue; (6) appellant was denied a fair and impartial jury due to Philadelphia's selection procedure systematically excluding minorities and counsel were ineffective for failing to raise the issue; (7) appellant was denied the right to testify and counsel were ineffective for failing to raise the issue; (8) guilt phase counsel was ineffective for failing to interview and call as a witness Dr. Gregory McDonald, who performed the autopsy, and appellate counsel was derivatively ineffective; (9) there was insufficient evidence to convict appellant of first-degree murder; (10) the assistant district attorney committed prosecutorial misconduct by improperly stating her personal opinion and presenting extra-record facts and counsel were ineffective for failing to raise the issue; and (11) cumulative prejudice.

Pa.C.S. §9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial . . . on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. §9544(b).

The majority of appellant's claims concern the effectiveness of counsel. When analyzing ineffectiveness claims, we begin with the presumption counsel was effective. *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013). To be granted relief on an ineffectiveness claim, appellant must satisfy the performance and prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) by a preponderance of the evidence. This Court has applied *Strickland* by requiring an appellant to establish three elements: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different had counsel not erred. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).

As appellant's direct appeal preceded *Grant* and new counsel litigated claims of guilt phase counsel's ineffectiveness in that initial appeal, his present claims of trial and penalty phase counsel's ineffectiveness may implicate PCRA waiver. However, such claims may be cognizable as claims of appellate counsel's ineffectiveness, so long as appellant has "layered" the claims to account for both levels of prior representation. Regarding layered claims, this Court has required appellants to demonstrate not only that guilt phase counsel was ineffective under the *Strickland* test, but that appellate counsel also was ineffective. *See Commonwealth v. McGill*, 832 A.2d 1014, 1023 (Pa. 2003). *See also Commonwealth v. Ali*, 10 A.3d 282, 292 (Pa. 2010).

Furthermore, we are not required to analyze the elements of an ineffectiveness claim in any order; if a claim fails under any element of the *Strickland* test, we may

proceed to that element first. *Robinson*, 82 A.3d at 1005, *citing Strickland*, *supra*; *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998). In addition, we may begin by assessing the merits of a defaulted underlying claim because, if the claim is deemed meritless, neither trial nor appellate counsel could be found ineffective.

### II. Failure to Present Mental Health and Life History Mitigation

Preliminarily, we agree with the PCRA court's determination appellant's ineffectiveness claim regarding counsel's failure to reasonably investigate, develop, and present mental health and life history mitigation for the penalty phase has arguable merit. We also recognize the PCRA court's conclusion penalty phase counsel's performance was reasonable due to appellant's lack of cooperation is questionable as penalty phase counsel provided no reasonable basis for his failure to obtain additional records regarding appellant's mental health and life history. N.T. 11/16/15 at 23-26. However, we decline to analyze these prongs of the ineffectiveness test as we agree with the PCRA court's determination appellant failed to show he was prejudiced by the alleged ineffectiveness. As such, we focus only on whether appellant has established prejudice.

Appellant claims trial and penalty phase counsel were ineffective for failing to investigate, develop, and present mitigating evidence, and appellate counsel was ineffective for failing to raise the claim on direct appeal. Appellant contends this ineffectiveness was caused by counsel's failure to: 1) obtain critical records; 2) have appellant examined by a neuropsychologist; and 3) investigate and present important mitigation witnesses. In essence, appellant's claim is counsel's ineffectiveness precluded Dr. Russell from concluding he was under extreme mental or emotional disturbance and was unable to conform his conduct to the requirements of the law at the time of the murder. Appellant suggests there is a reasonable probability the jury

would have found the mitigating circumstances at 42 Pa.C.S. §9711(e)(2) (defendant suffered from extreme mental or emotional disturbance) and (e)(3) (defendant unable to conform his conduct to requirements of law) to be applicable and at least one juror would have decided against imposing the death penalty.

The PCRA court conducted a hearing on this claim at which three experts testified: Dr. Russell and neuropsychologist Dr. Armstrong on behalf of appellant and psychiatrist Dr. O'Brien on behalf of the Commonwealth. The expert testimony focused on whether appellant suffered from brain damage which caused extreme mental or emotional disturbance and rendered him substantially unable to conform his conduct to the requirements of the law. Portions of the testimony of Dr. Russell and Dr. O'Brien also focused on whether the extensive background materials regarding appellant's mental health and life history provided by PCRA counsel were cumulative of the information provided by penalty phase counsel.

Dr. Russell testified he did not have enough information regarding appellant's background to make any diagnoses at the time of the penalty phase hearing as he had only been provided a copy of the Commonwealth's aggravating factors, the police report for the murder, and some paperwork from appellant's juvenile file. N.T. 11/17/15 at 15-16. Dr. Russell further testified he was able to diagnose appellant with attachment disorder, post-traumatic stress disorder, and a severe learning disability only after PCRA counsel provided him with extensive materials regarding appellant's background, including school records from both Puerto Rico and Philadelphia, DHS records, affidavits from foster parents, and the details of appellant's mother's death. *Id.* at 19-42. Dr. Russell stated had he been provided this information prior to trial he would have recommended appellant undergo neuropsychological testing and also would have been able to opine appellant was suffering from extreme mental or emotional disturbance at

the time of the murder and was substantially unable to conform his conduct to the requirements of the law. *Id.* at 42-46. However, on cross-examination, Dr. Russell testified although he did not have access to extensive background information and appellant was uncooperative at the penalty phase, the information provided by penalty phase counsel showed appellant was a poor student, transient, and may have witnessed his mother's murder. *Id.* at 80-84.

Dr. Armstrong testified she evaluated appellant by conducting a battery of tests to determine whether he suffered from neuropsychological impairments. Dr. Armstrong found appellant had strengths in a variety of visual and spatial functions which relate to being able to tell people apart, navigate in an environment, and remember simple visual materials. *Id.* at 126. However, Dr. Armstrong found appellant had impairments in executive functioning which relates to processing complex, novel, and conflicting information and verbal processing which relates to processing information given verbally or in a sequential manner. *Id.* at 129-30. Dr. Armstrong stated impairments in executive functioning and verbal processing are strongly associated with impaired functioning in the frontal lobes of the brain which can be caused by head injuries. *Id.* at 134, 140, 145. Based on her evaluation of appellant, Dr. Armstrong concluded he suffered from extreme mental and emotional distress caused by brain damage from head injuries, growing up in an unhealthy environment, and other stresses during his development. *Id.* at 156. Dr. Armstrong also concluded appellant's specific impairments, including his inability to process information, diminished his ability to conform his behavior to the requirements of the law. *Id.* at 157.

On cross examination, Dr. Armstrong stated she tested appellant in fifty-four areas of neuropsychological functioning and found three areas of severe impairment, four areas of moderate impairment, and twelve areas of borderline or mild impairment.

*Id.* at 168.  Dr. Armstrong also testified appellant scored a ninety-three on a full scale IQ test, which is in the high average range.  *Id.* at 171.  Dr. Armstrong further stated her conclusions were not based on any documentation other than the neuropsychological tests she performed.  *Id.* at 177.

Dr. O'Brien offered rebuttal testimony on behalf of the Commonwealth based on his psychiatric evaluation of appellant and review of the materials provided by penalty phase counsel and PCRA counsel.  *Id.* at 184.  Dr. O'Brien stated his evaluation of appellant included questioning appellant regarding his background, conducting a mental status examination and a cognitive capacity screening examination which identifies deficits caused by neuropsychological impairment.  *Id.* at 189-90.  Based on this evaluation, Dr. O'Brien found appellant does not show any psychiatric symptoms and the variable strengths and weaknesses found during the neuropsychological exam are typical of most individuals.  *Id.* at 191.

Dr. O'Brien further opined extreme mental or emotional disturbance would indicate extreme psychiatric, emotional, or cognitive impairments, none of which were found by himself or Dr. Armstrong.  *Id.* at 192.  Further, Dr. O'Brien stated the impairments found by Dr. Armstrong did not relate to the offense and appellant's actions after the offense indicated he had the cognitive awareness to appreciate the wrongfulness of his actions.  *Id.* at 192-93.  Dr. O'Brien also determined appellant chose not to conform with the requirements of the law rather than being unable to conform to those requirements, and his evaluation led him to believe appellant was streetwise and was an individual who was able to see an opportunity and act intentionally to take advantage of that opportunity.  *Id.* at 193-94.  Additionally, Dr. O'Brien stated Dr. Armstrong failed to substantiate her conclusions with any relevant information that would have suggested appellant was suffering from extreme mental and emotional

distress and had a diminished ability to conform his behavior to the requirements of the law at the time of the offense.[6] *Id*. at 196-97. Dr. O'Brien found the opposite was true because appellant's statement to police indicated appellant was able to develop and participate in a plan, effectively carry out that plan, and then act in a manner to avoid criminal apprehension.[7] *Id*. at 202. Dr. O'Brien concluded appellant does not exhibit any symptoms which suggest he was suffering from extreme mental or emotional disturbance, either at the time of the offense or presently, and was not substantially impaired such that he could not conform his conduct to the requirements of the law. *Id*. 208.

On cross-examination, Dr. O'Brien did not dispute the fact appellant had a chaotic and unsupervised life and most likely felt neglected by his father and others who cared for him, which could have led to his poor attendance and academic functioning in school. *Id*. at 222-227 (chaotic life and neglect), 236 (school). Dr. O'Brien consistently stated, however, appellant's academic problems were not a result of neuropsychological impairment. *Id*. at 236. Dr. O'Brien also agreed the circumstances of appellant's

---

[6] During this discussion, Dr. O'Brien also stated the additional materials provided to Dr. Russell by PCRA counsel were cumulative of the information provided by penalty phase counsel and Dr. Russell clearly had enough information to present the jury with sufficient evidence to find the 42 Pa.C.S. §9711(e)(8) (catch-all) mitigating factor. *Id*. at 198-99. As such, Dr. O'Brien opined any additional evidence was cumulative and unnecessary. *Id*. at 199.

[7] Relevant to this observation, appellant, in his statement to police, stated he and his co-defendants observed the victim and his wife leaving their jewelry store carrying a manila envelope which they believed contained something valuable. N.T. 1/29/98 at 135-36. Appellant then stated he and his co-defendants decided to follow and rob the couple as they were stopped at a red light. *Id*. at 136. Appellant stated he exited his vehicle, broke the window of the victim's vehicle, stole the envelope and the purse of the victim's wife, shot the victim during a struggle, and fled in the victim's vehicle. *Id*. at 136-38. Appellant also stated he hid the gun after discarding the victim's vehicle. *Id*. at 138.

mother's death more than likely had an emotional effect on appellant, but did not rise to the level of post-traumatic stress disorder. *Id.* at 233-34. Dr. O'Brien further stated he did not disagree with Dr. Armstrong's testimony appellant suffered from impairment in the frontal lobes of his brain, but continued to opine those impairments did not relate to any serious impairment in executive functioning and did not correlate to his behavior at the time of the offense. *Id.* at 256-57.

As stated above, the PCRA court found appellant's claim of error to have arguable merit but determined penalty phase counsel's performance was reasonable and appellant failed to establish prejudice; the court was unable to conclude there was a reasonable probability at least one juror would have reached a different verdict based on the evidence proffered at the PCRA hearing.

The PCRA court found not credible the testimony of Drs. Russell and Armstrong after considering Dr. O'Brien's testimony appellant showed only three out of 54 areas of severe impairment, none which provided a clear and direct link to the offense committed. The court further found appellant fell within the average range of intelligence and his problems in school could be attributed to English being his second language. As to the Section 9711(e)(2) and (e)(3) mitigating circumstances, the PCRA court found appellant's experts' opinions to be completely incredible based on appellant's conduct before, during, and after the offense. The court, in agreement with Dr. O'Brien's opinion, determined appellant clearly knew what he did was wrong based on the high degree of planning, precise victim selection, discarding of evidence, and avoidance of criminal apprehension. The PCRA court concluded the totality of the circumstances surrounding the crime completely undermined Drs. Russell and Armstrong's conclusions the Section 9711(e)(2) and (3) mitigating factors applied.

In addition, the PCRA court determined appellant's DHS files and other life history evidence was either cumulative or equally favored the Commonwealth as they showed his father eventually provided a warm and clean home and that his brother was able to remain trouble-free despite the same upbringing. The court finally found the testimony of mother's murderer weakened the mitigating evidence as his testimony contradicted Dr. Russell's assertion appellant witnessed the actual murder. Accordingly, the PCRA court concluded appellant failed to show he would have been prejudiced by penalty phase counsel's alleged failure to investigate, prepare, and present additional mitigating evidence.

Appellant now contends penalty phase counsel failed to obtain and provide Dr. Russell readily available critical records, including his DHS and school records, the juvenile file of his brother, and the homicide file for mother's murderer. Appellant argues the availability of these records at the penalty phase would have allowed Dr. Russell to diagnose appellant with attachment disorder, post-traumatic stress disorder, learning disabilities, and possible brain damage and would have caused Dr. Russell to request that appellant undergo neuropsychological testing. Appellant contends this additional information and testing would have allowed Dr. Russell to opine appellant was under the influence of extreme emotional disturbance at the time of the murder and was unable to conform his conduct to the requirements of the law. Appellant contends had these opinions been rendered at the penalty phase, he would have been entitled to ask the jury to find the Section 9711(e)(2) and (3) mitigating circumstances, and there is a reasonable probability at least one juror would have decided against imposing the death penalty.

Appellant additionally claims penalty phase counsel was ineffective for failing to correct Dr. Russell's misstatement of his age at the time of the murder as twenty rather

than nineteen and failing to provide Dr. Russell with the competency report of Dr. Stanton who opined appellant was immature. Appellant contends there is a reasonable probability this evidence would have led the jury to find the 42 Pa.C.S. §9711(e)(4) (age) mitigator and at least one juror to decide against imposing the death penalty.

Appellant further contends the PCRA court erred by basing its ruling solely on the credibility of Drs. Russell and Armstrong as the court ignored a mass of other evidence presented regarding his mental health and life history. Appellant claims the PCRA court ignored the following evidence which would have led to a reasonable probability at least one juror would have decided against imposing the death penalty: 1) Dr. O'Brien's agreement with Drs. Russell and Armstrong that appellant suffered from an unstable upbringing and chaotic childhood; 2) the affidavits of lay witnesses who stated appellant and his brother were shunned by their grandmother and shuffled from home to home; 3) evidence appellant was an immature nineteen year old at the time of the offense, and 4) evidence appellant witnessed his mother shot and dying in a pool of blood at a young age.

Lastly, appellant contends the PCRA court's credibility determinations regarding Drs. Russell and Armstrong are not supported by the record as the experts not only found appellant was severely impaired in three out of fifty-four areas but also had moderate impairments in four areas and mild impairments in eight areas. Appellant claims the PCRA court's statement appellant's impairments did not provide a link to the crime was legal error as mitigation is not required to have a nexus to the crime.

The Commonwealth argues appellant has failed to show prejudice as the information relied on by Dr. Russell at the PCRA hearing was cumulative of the information in appellant's juvenile file, which was made available prior to his testimony at the penalty phase. The Commonwealth also argues appellant fails to show the

absence of neuropsychological testing was prejudicial as the PCRA court found Dr. Armstrong's testimony incredible and credited the testimony of Dr. O'Brien who testified appellant's condition did not warrant a psychiatric diagnosis, his limited cognitive impairment did not rise to the level of extreme mental or emotional disturbance, and his actions surrounding the murder and his refusal to cooperate with counsel and Dr. Russell were volitional rather than the result of a neuropsychological or psychiatric impairment.

The Commonwealth additionally contends the PCRA court did not ignore other mitigation evidence presented by appellant but simply found it not credible or immaterial and the court's decision to weigh the evidence in a certain way was supported by the record. The Commonwealth points out although Dr. O'Brien agreed with appellant's experts regarding appellant's chaotic childhood, his testimony differed on critical issues including appellant's intellectual capacity and that his few deficiencies had no relation to impulse control or whether he had knowledge his actions were wrong. The Commonwealth further argues there was evidence appellant's grandmother sent him away to Philadelphia for safety reasons, and also that the PCRA court correctly acknowledged appellant was nineteen years old at the time of the murder. The Commonwealth also argues penalty phase counsel's failure to call mother's murderer as a witness was not prejudicial because his testimony at the PCRA hearing undermined Dr. Russell's testimony appellant witnessed the murder itself. In actuality, the Commonwealth argues, testimony revealed appellant's mother was shot and killed prior to appellant's entering the room.

Lastly, the Commonwealth contends the PCRA court's failure to list each area of mild impairment found by Dr. Armstrong was not tantamount to failing to consider those findings. The Commonwealth argues the PCRA court deemed those findings incredible

after consideration and was not required to credit those findings in light of Dr. O'Brien's contrary testimony. The Commonwealth asserts appellant's presentation of trivial mental impairments which were unrelated to the crime failed to establish at least one juror would have decided against imposing the death penalty.

After a thorough review of the record, we find no error in the PCRA court's determination appellant failed to establish he was prejudiced by penalty phase counsel's alleged ineffectiveness. As the arguments of the parties and the PCRA court's resolution of this issue largely depend upon competing expert testimony, we note we are bound by the credibility determinations of the PCRA court so long as there is record support for those determinations. *See Commonwealth v. Hannibal*, 156 A.3d 197, 228 (Pa. 2016), *citing Commonwealth v. Williams*, 846 A.2d 105, 112 (Pa. 2004). In *Hannibal*, which also came to this Court on appeal from a denial of PCRA relief in a capital case, this Court was tasked with deciding an issue almost identical to the case at hand — whether penalty phase counsel was ineffective for failing to investigate and present mental health mitigation evidence at the penalty proceeding.[8] *Id*. at 222. We denied the claim based on appellant's failure to establish prejudice, reasoning the PCRA court dismissed the claim based on credibility determinations which were supported by the record. *Id*. at 228. In making this determination, we stated the following:

> Of course, we recognize appellant would have presented his mental health expert evidence to a jury, notwithstanding its strength or issues of credibility, leaving the question for the jury. Nevertheless, in the collateral attack scenario, where a *Strickland* assessment of prejudice is at issue,

---

[8] Rather than arguing application of the Section 9711(e)(2) and (e)(3) mitigating circumstances, the appellant in *Hannibal* argued for application of the (e)(8) mitigating circumstance due to his belief he had borderline intelligence and organic brain damage. *Hannibal*, 156 A.3d at 222.

the PCRA court's credibility findings are consequential, as *Williams* recognized. For purposes of assessing *Strickland* prejudice here, the question is whether appellant has shown a reasonable probability, had the mitigation evidence adduced at the PCRA hearing also been presented at the penalty phase, the outcome of the proceedings would have been different because at least one juror would have found the catch-all mitigating circumstance and would have proceeded to conclude it outweighed, or was as weighty as, the aggravating circumstance, so as to convince a juror to find the overall quality of the case in mitigation warranted a sentence of life in prison. *See* [*Commonwealth v.*] *Daniels*, 104 A.3d [267, 303-04 (Pa. 2014)]. The PCRA court, which heard the new case in mitigation, and had the trial record before it, answered this question in the negative based in part on an assessment of the credibility and strength of appellant's new evidence. The court's assessment of prejudice is supported by the record.

*Id.*

The situation here is almost identical to *Hannibal*. The PCRA court made credibility determinations regarding the testimony of the expert witnesses and those credibility determinations were supported by evidence in the record — the court believed the testimony of Dr. O'Brien, who disagreed with the findings of Drs. Russell and Armstrong regarding whether appellant was suffering from extreme mental or emotional disturbance and was unable to conform his conduct to the requirements of the law at the time of the offense. The PCRA court — who oversaw the guilt phase, penalty phase, and PCRA proceedings — held there was no reasonable probability the outcome of the penalty phase would have been different had the additional evidence from the PCRA hearing been available during the penalty phase, and based this holding on the credibility of the expert witnesses. As evidenced by *Hannibal* and *Williams*, we must defer to the court's credibility determinations.

Furthermore, appellant's contention the PCRA court ignored other mental health and life history evidence and relied only upon the credibility of the expert witnesses in denying his claim is simply untrue. The PCRA court considered other evidence regarding appellant's upbringing and found it to be either cumulative or mutually

beneficial to the Commonwealth. *See* PCRA Court Op. at 29-30. Specifically the court considered appellant's DHS files and the murder of appellant's mother. The PCRA court also made an explicit finding regarding whether a review of the entirety of the evidence changed the weight given to the aggravating and mitigating circumstances in stating, "[a]fter evaluating all of the evidence presented at the penalty hearing, provided in the parties' PCRA briefs, and proffered at the evidentiary hearing, the scales weighing the aggravating circumstance and mitigating evidence remain unmoved." [9] *Id.* at 30. As appellant's claim is belied by the record, which shows the PCRA court did in fact consider the entirety of the evidence, he is not entitled to relief on this basis.

Accordingly, while appellant's claim has arguable merit and it is questionable whether penalty phase counsel had a reasonable basis for failing to investigate, develop, and present additional mental health and life history mitigation evidence, his claims in this regard were nevertheless properly dismissed by the PCRA court on *Strickland/Pierce* analysis grounds, in that it is not reasonably probable at least one juror would have decided against imposing the death penalty had the competing expert testimony and other evidence been presented at the penalty phase.[10]

---

[9] We find the PCRA court's evaluation of "all of the evidence" also included appellant's assertion penalty phase counsel failed to present evidence he was nineteen years old rather than twenty at the time of the murder and was immature for his age. We further find the PCRA court did not err in finding this small inaccuracy did not establish prejudice.

[10] On April 9, 2018, appellant and the Commonwealth filed a "Joint Application for Leave to File Post-Submission Communication with the Court and Joint Motion to Vacate Death Sentence, Remand for Resentencing to Life Without Parole, and then Transfer Appeal to Superior Court" ("Joint Application"). In this application, the Commonwealth agrees with appellant that we should grant relief on this claim. *See* Joint Application at ¶5 ("The Commonwealth agrees, and respectfully requests, that this Court should grant relief on Claim I set forth in Appellant's Brief (ineffective assistance of trial counsel during the penalty phase of trial)."). The application further requests that we vacate appellant's death sentence and remand with a directive that the court of common pleas sentence appellant to "life in prison without parole on the first-degree murder (continued…)

### III. Failure to Request *Simmons*[11] Instruction

Appellant argues he was entitled to a *Simmons* instruction as the prosecutor injected his future dangerousness into the sentencing hearing by comparing the instant crime with a juvenile offense and arguing his level of violence escalated as he aged. Appellant further argues guilt phase counsel was ineffective for failing to request a *Simmons* instruction and appellate counsel was ineffective for failing to raise the issue on direct appeal. The Commonwealth argues the issue is doubly waived as appellant failed to raise the claim both at trial and on direct appeal. The Commonwealth further argues the claim is meritless as the prosecutor did not argue appellant should be sentenced to death because he would kill again but referred only to his past conduct. The PCRA court agreed with the Commonwealth, finding the prosecutor confined her questioning and comments to appellant's past violent history, and appellant's future dangerousness was not placed at issue before the jury.

When a prosecutor places a defendant's future dangerousness at issue during his sentencing hearing, the defendant is entitled to have the jury instructed a life sentence means he is ineligible for parole, i.e., "life means life." *Simmons v. South Carolina*, 512 U.S. 154, 156 (1994). "The trial court's obligation to issue a *Simmons*

---

(…continued)
conviction." Joint Application at ¶6-7. We note the Commonwealth's "agreement" and joint "request" asserted in the application are in complete derogation of the arguments it made in its own brief filed mere months ago in this Court, and furthermore, are not supported by any argument or concession that legal error occurred. As we fully explained in *Commonwealth v. Lavar Brown*, __ A.3d __, 2018 WL 5046812 (Pa. 2018), "neither the parties, by agreement, nor this Court, absent a finding of legal error, have the power or ability to order that the jury's verdict be commuted[.]" *Id*. at *7. Accordingly, the joint application filed in the instant matter is hereby denied

[11] *Simmons v. South Carolina*, 512 U.S. 154 (1994) (when future dangerousness is at issue in capital case, jury must be informed "life means life" and defendant is ineligible for parole).

charge is triggered only upon the existence of twin requirements, *i.e.*, future dangerousness being placed at issue, and a defense request. These are substantive requirements, not procedural ones." *Commonwealth v. Spotz*, 759 A.2d 1280, 1291 n.14 (Pa. 2000) (emphasis omitted). Such an instruction is required only when the defendant's future dangerousness is expressly implicated, and mere references to a defendant's past violent acts does not expressly implicate future dangerousness. *Commonwealth v. Patterson*, 91 A.3d 55, 78 (Pa. 2014).[12]

The record supports the PCRA court's finding this claim lacks arguable merit. During closing statements at the penalty phase, the prosecutor argued for the jury to find the aggravating factor of significant history of violent felony convictions. N.T. 2/5/98 at 56-57. In doing so, the prosecutor referenced appellant's juvenile robbery conviction for taking a woman's purse using a screwdriver as a weapon. *Id.* at 57. The prosecutor then compared the past conviction with the murder at issue here, stated both incidents showed appellant was capable of violent conduct, and then remarked "the older he gets, the bolder he gets." *Id.* Although appellant has construed this remark as an attempt by the prosecutor to place his future dangerousness at issue, this comment does not rise to the level of expressly implicating appellant's future dangerousness. *See Patterson*, *supra*. In fact, the prosecutor referred to appellant's past conduct, within the context of arguing for application of the past criminal history aggravator. Under these circumstances, appellant's *Simmons* claim lacks arguable merit, and neither guilt phase counsel nor appellate counsel can be found ineffective for failing to raise the issue.

---

[12] We recognize *Patterson* failed to acknowledge the more relaxed standard for assessing when a defendant is entitled to a *Simmons* charge that applies to trials conducted after *Kelly v. South Carolina*, 534 U.S. 246 (2002), but this Court has determined *Kelly* does not apply retroactively to instances — such as the present case — in which a defendant was sentenced before *Kelly* was filed. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1243-46 (Pa. 2006).

## IV. Failure to Present Mental State Defenses at Guilt Phase

Appellant argues he was incompetent to stand trial based on Dr. Russell's testimony at the evidentiary hearing that his unwillingness to cooperate with counsel was due to incompetency based on a review of records which were absent at the time of trial. Appellant contends guilt phase counsel was ineffective for failing to conduct a reasonable investigation into his competency and demand a competency hearing. Appellant further argues guilt phase counsel was ineffective for failing to investigate and present evidence of his diminished capacity and drug use which would have reduced his degree of mental culpability and avoided a conviction for first-degree murder. Appellant also argues appellate counsel was ineffective for failing to raise this issue on direct appeal.

The Commonwealth contends this claim is waived for failure to raise it on direct appeal and is otherwise meritless. The Commonwealth further contends appellant chose not to cooperate with counsel rather than being unable to cooperate with counsel. The Commonwealth also argues guilt phase counsel requested and was granted forthwith a psychiatric evaluation to determine appellant's competency after which the trial court found him competent to stand trial; Dr. Stanton, who performed the psychiatric evaluation, agreed appellant was competent and any problems appellant had regarding his cooperation with counsel were due to personality defects rather than mental defects. Furthermore, the Commonwealth notes Dr. Russell met with appellant three times prior to trial and never suggested he was incompetent to stand trial. The Commonwealth further argues guilt phase counsel was not required to continue consulting with mental health experts until finding one that was willing to find appellant incompetent. As to the diminished capacity defense, the Commonwealth argues appellant cannot now challenge the effectiveness of counsel regarding such a defense when he refused to

cooperate with psychological testing prior to trial. Furthermore, the Commonwealth suggests appellant suffered no prejudice as there was overwhelming evidence establishing the crime was well-planned and a diminished capacity defense would not have compelled a different result at trial.

The PCRA court concluded appellant's competency claim was meritless as he was found competent to stand trial by multiple experts and the trial court. The lower court further determined appellant's diminished capacity claim lacked merit as his refusal to cooperate in psychological testing caused guilt phase counsel to be unable to present a defense based on diminished capacity.

We agree appellant's claim regarding incompetency is meritless. Defendants are presumed to be competent and the burden is on the defendant to prove, by a preponderance of the evidence, that he is incompetent to stand trial. *Blakeney*, 108 A.3d at 752. Furthermore, there is a clear distinction between whether a defendant is unable to cooperate with counsel or chooses not to cooperate with counsel. *Commonwealth v. Flor*, 998 A.2d 606, 618 (Pa. 2010). The record here establishes appellant chose not to cooperate. Prior to appellant's motion to suppress, guilt phase counsel informed the court he was concerned with appellant's competency to stand trial as appellant did not wish to testify, did not wish to provide witnesses to penalty phase counsel, and did not wish to take part in plea negotiations because he had decided to let God handle the outcome of his case. N.T. 1/23/98 at 4. Following this discussion, the trial court colloquied appellant regarding his competency and found no question he was competent. *Id.* at 10-13. The trial court further ordered a mental health evaluation which also indicated appellant was competent. N.T. 1/30/98 at 3. As appellant's competency claim lacks merit, neither guilt phase counsel nor appellate counsel can be found ineffective for failing to raise the issue.

We further agree appellant's claim regarding guilt phase counsel's failure to present a diminished capacity defense is meritless. To succeed on the limited defense of diminished capacity, a defendant must prove he was unable to form the specific intent to kill. *Commonwealth v. Mason*, 130 A.3d 601, 630 (Pa. 2015). Furthermore, it is well settled guilt phase counsel cannot be deemed ineffective for failing to present a diminished capacity defense when a defendant refuses to cooperate in psychological testing. *Commonwealth v. Bomar*, 826 A.2d 831, 857-58 (Pa. 2003). At the penalty phase, Dr. Russell specifically testified he met with appellant three times prior to trial. N.T. 2/5/98 at 25. Dr. Russell stated appellant was completely uncooperative during the first two meetings and, at the third meeting, appellant would only talk about religion and some people in his life rather than submit to psychological testing. *Id.* at 25-26. As appellant refused to cooperate with the psychologist provided by his attorneys, his claim lacks merit and neither guilt phase counsel nor appellate counsel can be found ineffective for failing to raise the issue.

## V. Denial of Impartial Sentencing Jury (Striking of Death Qualified Jurors)

Appellant argues the trial court improperly dismissed certain jurors, Sandra Taylor and Cynthia Alexander, for stating they would be uncomfortable voting for the death penalty even though they never stated they would be unable to follow the law or conduct themselves in an impartial manner. Appellant further contends the trial court improperly dismissed other jurors after they responded they would be unable to impose a death sentence without further inquiring as to whether the jurors even understood the questions as asked. Appellant also argues guilt phase counsel was ineffective for failing to rehabilitate the prospective jurors and object to the trial court's conduct and appellate counsel was ineffective for failing to raise the issue on direct appeal.

The Commonwealth first argues this claim is waived as appellant failed to object to the trial court's conduct during jury selection and failed to raise the claim on direct appeal. The Commonwealth further contends this claim is meritless in any event since the questioning of Sandra Taylor and Cynthia Alexander showed their views about the death penalty would interfere with their ability to serve as jurors. The Commonwealth also argues no further questioning is required of jurors who establish an opposition to the death penalty which would impair their performance as jurors, and appellant has failed to establish prejudice by proving any of the dismissed jurors would have renounced their view on the death penalty upon further questioning.

The PCRA court concluded the questioning of Sandra Taylor and Cynthia Alexander provided a sufficient basis for the trial court to determine their views would substantially impair the performance of their duties as jurors. The court further found guilt phase counsel cannot be found ineffective for failing to continuously question a juror as to whether they are irrevocably committed to voting against the death penalty, and prospective jurors may be excused for cause without further questioning if they would be unable to perform their duties impartially at sentencing.

When a juror's views on capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath, he is properly excluded from the jury. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1172 (Pa. 2011). Jurors are also properly excluded when they express an uncertainty about their ability to impose the death penalty. *Commonwealth v. Watkins*, 108 A.3d 692, 706-07 (Pa. 2014), *quoting Commonwealth v. Carson*, 913 A.2d 220, 262 (Pa. 2006). Furthermore, it is within the trial court's discretion to strike a juror for cause and such a decision will not be disturbed absent an abuse of discretion. *Id* at 707.

The record supports the PCRA court's denial of relief on this claim. During jury selection, the trial court struck a number of jurors for cause without individual questioning based on their affirmative response to the following question: "Is there anyone here who would be unable, for any reason, to impose a death sentence?" N.T. 1/26/98 at 23-28; N.T. 1/27/98 at 12-26, 145-49; N.T. 1/28/98 at 23-28. The trial court also struck for cause Sandra Taylor and Cynthia Alexander based on their statements they would be uncomfortable imposing the death penalty following individual questioning. When specifically asked whether the possibility of considering the death penalty would affect her ability to reach a fair verdict, Ms. Taylor responded: "I think it would bother me a little bit." N.T. 1/26/98 at 45-46. Ms. Alexander responded to questions in a similar fashion stating the following: "I wouldn't be very comfortable with the death penalty. … I'm not very comfortable voting — for voting for the death penalty. I'm a Christian. I don't really believe in the death penalty. … I'm really uncomfortable in voting for the death penalty." N.T. 1/26/98 at 165-67. The affirmative response from the jurors questioned as a group established those jurors would not have been able to impose the death penalty and, as a result, their performance as jurors in this case would have been substantially impaired. The responses from Ms. Taylor and Ms. Alexander, at a minimum, show those two jurors were uncertain about their ability to impose the death penalty. As such, the jurors were properly excluded and the trial court did not abuse its discretion. Accordingly, this claim is meritless and neither guilt phase counsel nor appellate counsel can be found ineffective for failing to raise the issue.

### VI. *Batson*[13] Claim

---

[13] *Batson v. Kentucky*, 476 U.S. 79 (1986) (prosecutor may not strike potential juror based on race).

Appellant (who is of Hispanic origin) argues the Commonwealth exercised its peremptory challenges during jury selection in a racially discriminatory manner in violation of the Sixth and Fourteenth Amendments under *Batson v. Kentucky*, 476 U.S. 79 (1986). Appellant contends the Commonwealth struck thirty-five percent of Caucasian jurors while striking fifty-five percent of African-American jurors and fifty-eight percent of all minorities. Appellant further contends the record reveals no race neutral reason for the Commonwealth's exclusion of minorities at a rate much higher than Caucasians. In support of this argument, appellant references a jury selection training video used by the Philadelphia District Attorney's Office which taught juror discrimination on the basis of race and suggested prosecutors could be fired if discriminatory practices were not used.[14] Appellant further argues guilt phase counsel and appellate counsel were ineffective for failing to raise the issue.[15]

The Commonwealth responds by arguing this issue is waived as appellant failed to raise it at trial and on direct appeal. The Commonwealth further contends a *prima facie* case of discrimination cannot be first established on appeal as a *Batson* claim requires a defendant to raise it during jury selection and allow the prosecutor to place her reasons for striking each juror on the record. Commonwealth's Brief at 64, *citing Commonwealth v. Basemore*, 744 A.2d 717, 729 (Pa. 2000). The Commonwealth further argues appellant must now show actual, purposeful discrimination to overcome

---

[14] The referenced training video was created by former Assistant District Attorney Jack McMahon in 1987 and described his views on jury selection, including how to minimize the seating of African-American jurors. *Commonwealth v. Rollins*, 738 A.2d 435, 443 n.10 (Pa. 1999).

[15] Appellant purports to establish a *prima facie* case of discrimination. However, as noted below, appellant is not entitled to present a mere *prima facie* case at this stage, but instead must show actual, purposeful discrimination. As such, we view his proffer and arguments in the context of whether actual, purposeful discrimination was present during the selection of his jury.

the waiver of his *Batson* claim. Commonwealth's Brief at 65, *citing Commonwealth v. Uderra*, 862 A.2d 74, 87 (Pa. 2004). The Commonwealth also contends a *Batson* claim is untenable on this record as the prosecutor only used eighteen of twenty-one preemptory challenges (eight on Caucasians, eight on African-Americans, one on a Hispanic, and one on a person who identified her race as "other") and the jury was racially diverse (six African-Americans, five Caucasians, and one person who identified her race as "other"). The Commonwealth further argues this Court has consistently held the training video referenced by appellant does not prove a general policy of racial discrimination. Commonwealth's Brief a 68, *citing Commonwealth v. Hutchinson*, 25 A.3d 277, 288-89 (Pa. 2011).

The PCRA court found appellant's *Batson* claim to be waived for failure to raise it during jury selection and on direct appeal; the court further held the claim failed on its merits. The PCRA court determined not only did appellant fail to make a record identifying the race of each juror excluded by the prosecution, but the record reveals the prosecutor used her peremptory challenges in a non-discriminatory manner which resulted in a racially diverse jury. The PCRA court further stated appellant's reference to the training video does not establish discrimination or relieve him of his duty under *Batson*.

As a preliminary matter, we agree with the PCRA court's determination that appellant failed to preserve his *Batson* claim when he did not raise the claim during jury selection and on direct appeal.[16] Accordingly, "in order to succeed on an unpreserved

---

[16] We note an appellant with a preserved *Batson* claim is entitled to the burden-shifting test set forth in that case: "[f]irst, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race[; s]econd, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for his peremptory challenges[; f]inally, the trial court must determine whether the defendant has carried his burden of proving purposeful (continued…)

claim of racial discrimination in jury selection . . . a post-conviction petitioner may not rely on a *prima facie* case under *Batson*, but must prove actual, purposeful discrimination by a preponderance of the evidence, in addition to all other requirements essential to overcome the waiver of the underlying claim." *Uderra*, 862 A.2d at 87 (internal citations omitted).

The record supports the PCRA court's determination appellant's *Batson* claim lacks merit. Indeed, the record is devoid of any showing of actual or purposeful discrimination as required by *Uderra* and such a finding would directly conflict with the specific finding of the PCRA court, which also sat as the trial court, that the Commonwealth used its peremptory strikes in a race-neutral manner, *see* PCRA Court Op. at 38-39 (eighteen Commonwealth strikes used to exclude eight African-Americans, eight Caucasians, one Hispanic, and one person who identified as "other"). Furthermore, showing that a prosecutor struck a greater percentage of minorities than whites is inadequate to prove actual, purposeful, discrimination by a preponderance of the evidence. *See Commonwealth v. Simpson*, 66 A.3d 253, 263 (Pa. 2013). Additionally, this Court has previously stated the training video cited by appellant does not establish a policy of discrimination in jury selection and does not prove there was discrimination in his case. *See Commonwealth v. Rollins*, 738 A.2d 435, 443 n.10 (Pa. 1999). As appellant's *Batson* claim lacks arguable merit, neither guilt phase counsel nor appellate counsel can be found ineffective for failing to raise the issue.

**VII. Denial of Impartial Jury (Minorities Excluded from Jury Pool)**

---

(…continued)
discrimination." *Commonwealth v. Simpson*, 66 A.3d 253, 261 (Pa. 2013), *citing Batson*, 476 U.S. at 96-98.

Appellant argues he was denied a jury pool representing a fair cross-section of his community and a fair and impartial jury of his peers. Appellant contends Philadelphia's jury selection procedure systematically excludes minorities by only including registered voters and those licensed to drive. Appellant further contends the under-representation of Hispanics in his jury pool constitutes *prima facie* proof of this systematic exclusion as Hispanics make up eight and one-half percent of Philadelphia's population but only four and one-half percent of his jury pool identified as Hispanic.[17] Appellant further argues guilt phase counsel and appellate counsel were ineffective for failing to raise this claim.

The Commonwealth contends this issue is waived as appellant failed to raise it at trial and on direct appeal. The Commonwealth further argues the claim is frivolous as appellant has failed to show significant under-representation. The Commonwealth contends appellant has only made a guess as to how many Hispanics were included in his jury pool based on his assessment of surnames, and makes no attempt to establish that the purported exclusion of Hispanics was systematic. The Commonwealth further argues this Court has repeatedly rejected constitutional challenges to the neutral practice of selecting prospective jurors using voter registration lists and driver's license lists. Commonwealth's Brief at 72, *citing Commonwealth v. Romero*, 938 A.2d 362, 374 (Pa. 2007). The PCRA Court denied appellant's claim, relying on this Court's precedent holding a computer system which randomly selects names from voter registration and driver's license databases does not constitute systematic exclusion of jurors based on gender or race. PCRA Court Op. at 41, *citing Romero, supra*.

---

[17] Appellant claims, based on his evaluation of surnames, only six people out of the one hundred twenty-five people summoned for his case were Hispanic.

We agree with the PCRA court and find appellant's claim regarding the racial makeup of his jury pool to be meritless under Pennsylvania law. "Proof is required of an actual discriminatory practice in the jury selection process, not merely under-representation of one particular group. The defendant bears the initial burden of presenting *prima facie* evidence of discrimination in the jury selection process." *Commonwealth v. Johnson*, 838 A.2d 663, 682 (Pa. 2003) (internal citations omitted). To make a *prima facie* showing, a defendant must demonstrate: 1) the group allegedly excluded is a distinctive group in the community; 2) the representation of this group in jury pools is not fair and reasonable in relation to the number of such people in the community; and 3) the under-representation is due to the systematic exclusion of the group in the jury selection process. *Id.*, *quoting Commonwealth v. Craver*, 688 A.2d 691, 696 (Pa. 1997). "[S]ystematic" is defined as "caused by or inherent in the system by which juries were selected." *Commonwealth v. Edwards*, 903 A.2d 1139, 1151 (Pa. 2006). Fatal to appellant's claim, however, is this Court's precedential jurisprudence which has consistently rejected arguments that the practice of selecting jury pools using voter registration and driver's license lists causes systematic exclusion of any group. *See Romero*, 938 A.2d at 374; *Commonwealth v. Bridges*, 757 A.2d 859, 868 (Pa. 2000). As appellant's claim lacks arguable merit, neither guilt phase counsel nor appellate counsel can be found ineffective for failing to raise the issue.

## VIII. Denial of Right to Testify

Appellant argues he is entitled to a new trial because guilt phase counsel and the trial court denied him the right to testify and there was no colloquy regarding his right to testify at the suppression hearing or at trial. Appellant contends it is likely his testimony at the suppression hearing would have led to his statement to police being suppressed, which in turn would have changed the outcome of the trial. Appellant contends without

the admission of his statement, in which he admitted being the shooter, he would not have been convicted of first-degree murder as other evidence was inconsistent as to the identity of the shooter. Appellant further argues appellate counsel was ineffective for failing to raise the issue on direct appeal.

The Commonwealth first argues this issue is waived as appellant failed to raise it at trial or direct appeal. The Commonwealth also argues the claim is meritless as guilt phase counsel made clear he and appellant discussed his right to testify and appellant was urged to testify but refused. The Commonwealth contends appellant does not dispute he was advised to testify, does not contend he was given bad advice, and fails to allege what his testimony would have been and how it would have affected the result. The Commonwealth further contends Pennsylvania law does not require courts to conduct colloquies regarding a defendant's right to testify.

The PCRA court concluded this claim was waived for failure to raise it on direct appeal and is meritless in any event. The PCRA court first determined Pennsylvania does not expressly require a trial court to conduct a colloquy regarding a defendant's right to testify. The PCRA court also acknowledged appellant was made aware of his right to testify during guilt phase counsel's discussions with the Court, appellant was urged by guilt phase counsel to testify, and he refused. Accordingly, the PCRA court concluded appellant failed to demonstrate he was improperly denied the right to testify.

We agree this claim is waived, but for different reasons than those argued by the Commonwealth. Although appellant did raise this claim in his original *pro se* PCRA petition, *see* Appellant's *Pro Se* Motion for Post-Conviction Collateral Relief, 5/22/2002 at ¶2, it was not raised in his amended PCRA petition, which is the subject of this appeal. In vacating the dismissal of the amended PCRA petition, this Court gave specific instructions remanding the matter "to the PCRA court for review and disposition

limited to the issues raised in the PCRA petition as amended[.]" *Rivera II*, 65 A.3d at 290. Furthermore, "[w]e have consistently held that in the absence of permission from this Court, a PCRA petitioner is not entitled to raise new claims following our remand for further PCRA proceedings." *Commonwealth v. Sepulveda*, 144 A.3d 1270, 1279 (Pa. 2016). *See also Commonwealth v. Spotz*, 18 A.3d 244, 328 (Pa. 2011) (denying request for remand to consider issues first raised in motion for reconsideration); *Ali*, 10 A.3d at 320 (finding clams raised for first time on limited remand to be unreviewable); *Commonwealth v. Rainey*, 928 A.2d 215, 226 n.9 (Pa. 2007) (raising additional issues outside of remand order improper); *Commonwealth v. Rush*, 838 A.2d 651, 661 (Pa. 2003) (remand does not open door to raise new claims on remand). Accordingly, appellant's claim he was denied the right to testify and appellate counsel was ineffective for failing to raise such a claim on direct appeal is waived and unreviewable.

### IX. Failure to Interview and Call Dr. Gregory McDonald as a Witness

Appellant argues guilt phase counsel was ineffective for failing to call Dr. Gregory McDonald, the medical examiner who actually performed the victim's autopsy, as a witness after the Commonwealth presented Dr. Ian Hood to testify about Dr. McDonald's findings. Appellant contends the prosecutor mischaracterized Dr. Hood's testimony in arguing the trajectory of the bullets establish appellant shot the victim while he was seated in the vehicle. Appellant further contends had guilt phase counsel interviewed and called Dr. McDonald as a witness, Dr. McDonald would have stated it was impossible for the shooting to have occurred while the victim was still seated in the vehicle and there was evidence of a struggle. Appellant also argues appellate counsel was ineffective for failing to raise the issue on direct appeal. Finally, appellant argues Dr. Hood's presentation of Dr. McDonald's autopsy report violated the confrontation

clause as the autopsy report was testimonial in nature and inadmissible if not presented by its author.

The Commonwealth contends this claim is waived for failure to raise it on direct appeal and on PCRA review.[18] The Commonwealth further argues Dr. McDonald's affidavit[19] does not contradict Dr. Hood's testimony and does not state the shooting occurred outside the vehicle. The Commonwealth contends Dr. McDonald's proposed testimony would not have undermined the Commonwealth's case or added to appellant's theory of the case and thus appellant has failed to show the verdict would have been different had Dr. McDonald testified at trial.

The PCRA court determined this claim was waived as it was not raised on direct appeal and is otherwise meritless. The lower court based its assertion on the fact appellant did not argue guilt phase counsel was unprepared for Dr. Hood's testimony or his testimony was inaccurate or inadmissible, but only that guilt phase counsel was ineffective for failing to foresee how the prosecution would use Dr. Hood's testimony during closing arguments. The lower court further stated guilt phase counsel could not have been ineffective for failing to call Dr. McDonald as a witness since Dr. McDonald was unavailable.

---

[18] Appellant first made this confrontation clause claim in his amended PCRA petition filed in September 2003, but later abandoned it in his PCRA petition on remand filed in February 2015. Moreover, although appellant made the argument in his reply brief in the current appeal, he did not include it in his principal brief.

[19] The undated affidavit provides the following relevant statements from Dr. McDonald: 1) he performed the autopsy of the victim; 2) he was unable to give an expert opinion regarding whether the shooting of the victim occurred inside or outside of the vehicle; and 3) he was not contacted by guilt phase counsel and would have testified to the above facts had he been contacted. Appellant's PCRA Petition on Remand 2/6/2015 at Exhibit 27.

We agree appellant's claims regarding guilt phase counsel's failure to call Dr. McDonald as a witness and failure to object to the testimony of Dr. Hood based specifically on a violation of the confrontation clause are waived. However rather than focusing on waiver in the context of appellant's direct appeal, we find appellant waived both claims during the course of his collateral review.

In his amended PCRA petition, appellant claimed guilt phase counsel was ineffective for failing to file a motion to exclude the testimony of Dr. Hood on the grounds appellant was deprived of his rights to cross-examination and confrontation. Appellant's Amended PCRA Petition, 9/2/2003 at ¶75-85. On remand, after this Court vacated the erroneous dismissal of his amended PCRA petition, appellant abandoned this claim and instead argued only that guilt phase counsel was ineffective for failing to interview and call Dr. McDonald as a witness without referencing a right to confrontation. Appellant's PCRA Petition on Remand 2/6/2015 at 52-56. Appellant also failed to raise the confrontation clause claim in his jurisdictional statement and principal brief to this Court. Appellant sought to resurrect the claim for the first time in fourteen years in his reply brief in the current appeal. Appellant's Reply Brief at 24-27. Appellant's failure to preserve this claim results in waiver. *See Commonwealth v. Bracey*, 795 A.2d 935, 940 n.5 (Pa. 2001) (appellant prohibited from raising new issues or remedying an original brief's deficient discussions in reply brief).[20]

---

[20] This Court recently decided *Commonwealth v. Darnell Brown*, 185 A.3d 316 (Pa. 2018), in which we held autopsy reports are testimonial in nature such that the confrontation clause requires the report's author be available for cross-examination before it may be admitted as evidence at trial. Although his briefs in this appeal were filed after we granted allocatur in *Darnell Brown*, appellant does not refer to that case in his arguments. In any event, appellant's failure to preserve the claim throughout the PCRA proceedings means our decision in *Darnell Brown* is immaterial to the disposition of this case. Furthermore, as appellant makes the claim within the ineffectiveness rubric, we note "counsel cannot be deemed ineffective for failing to predict changes in the law." *Commonwealth v. Cousar*, 154 A.3d 287, 303 (Pa. 2017).

Moreover, appellant failed to raise the separate claim of counsel's ineffectiveness for failing to interview and call Dr. McDonald as a witness in his amended PCRA petition, raising it for the first time in his PCRA petition on remand filed twelve years later. As stated in Section VIII *supra*, this Court's remand order was limited to the issues raised in appellant's amended petition, *see Rivera II*, 65 A.3d 290, and he was not entitled to raise new claims following that remand order. *See Ali*, 10 A.3d 320 (finding claims raised for first time on limited remand unreviewable). As such, this additional claim is waived and unreviewable.

## X. Sufficiency of the Evidence — First-Degree Murder

Appellant argues there was insufficient evidence to convict him of first-degree murder as there was conflicting evidence from witnesses regarding which defendant was the shooter and whether the shooting took place inside the vehicle or during a struggle outside the vehicle. Appellant further argues appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal and the claim has not been previously litigated because of that failure. The Commonwealth responds by arguing the issue was previously litigated and not cognizable under the PCRA as this Court previously conducted a sufficiency review and determined the evidence was sufficient to convict appellant of first-degree murder. Commonwealth's Brief at 80, *citing Rivera I*, 773 A.2d at 136. The Commonwealth further argues the claim is meritless as appellant admitted to shooting the victim and the evidence established the victim suffered multiple gunshots wounds to a vital area of his body. The PCRA court concluded appellant was not entitled to relief on this issue as the claim was previously litigated and disposed of by this Court. PCRA Court Op. at 43, *citing Rivera I*, 773 A.2d at 136.

Although our reasoning differs from that of the Commonwealth, we agree this claim is waived. Similar to his claim regarding the denial of his right to testify, which we disposed of in in Section VIII, *supra*, appellant raised a sufficiency of the evidence claim in his original *pro se* PCRA petition, *see* Appellant's *Pro Se* Motion for Post-Conviction Collateral Relief, 5/22/2002 at ¶17, but failed to raise it in his amended PCRA petition. This claim is therefore waived and unreviewable.

## XI. Prosecutorial Misconduct

Appellant claims the prosecutor improperly characterized certain testimony by witnesses (Lisa Woods and Eric Williams) during closing statements, and this purported prosecutorial misconduct entitles him to relief. Appellant further contends the prosecutor improperly relied on matters outside the record and distracted the jury from deciding the case based on the evidence. Appellant also argues the prosecutor inflamed the jury and misstated the law by stating an individual who brings a loaded gun to a robbery is prepared to kill by any means necessary. Appellant's Brief at 89, *citing* N.T. 2/2/98 at 81-83. Appellant insists guilt phase counsel and appellate counsel were ineffective for failing to raise the issue of prosecutorial misconduct at trial and on direct appeal.

The Commonwealth first contends this issue is waived as appellant failed to raise it at trial or on direct appeal. The Commonwealth further argues the misconduct claim is meritless in any event as the prosecutor simply referred to matters of common human experience that could be inferred from the evidence. Furthermore, the Commonwealth contends the prosecutor's arguments regarding Eric Williams's testimony squared with appellant's admission to committing the shooting. The Commonwealth asserts the prosecutor's statement of law regarding bringing a loaded gun to a robbery was correct

and was used to contrast the requisite intent for first-degree murder with that for second degree murder.

The PCRA court concluded there was no prosecutorial misconduct as to the statements about the testimony of Lisa Woods and Eric Williams. The court determined the prosecutor did not state her own personal belief appellant was guilty, but only used oratorical flair to make characterizations that could be reasonably inferred from the evidence. PCRA Court Op. at 46. The PCRA court further found the prosecutor's argument regarding the loaded gun did not misstate the law but instead properly distinguished the different degrees of murder.

We agree with the Commonwealth that this claim is waived, albeit for different reasons. Just as he did with his claims discussed in Sections VIII and X, *supra*, appellant raised this prosecutorial misconduct claim in his original *pro se* PCRA petition, *see* Appellant's *Pro Se* Motion for Post-Conviction Collateral Relief, 5/22/2002 at ¶16, but failed to raise it in his amended PCRA petition. Accordingly, appellant's prosecutorial misconduct claim is waived and unreviewable.

## XII. Cumulative Prejudice

Finally, appellant contends, even if he is not entitled to relief on any particular claim, he is nevertheless entitled to relief because the cumulative effect of all claimed errors denied him a fair trial, fair sentencing proceeding, and the heightened procedural safeguards in capital cases. Appellant argues the PCRA court erred when it held no individual claim demonstrated deficient performance, and since appellant failed to overcome his burden on each of the preceding claims, there can be no finding the failed claims warrant relief in the aggregate. PCRA Court Op. at 49. The Commonwealth responds by arguing appellant has failed to provide this Court with the required "specific, reasoned, and legally and factually supported argument" supporting his

assertion of cumulative prejudice but instead only offers a boilerplate claim that prejudice from ineffectiveness claims may be evaluated in the aggregate. Commonwealth's Brief at 92, *citing Commonwealth v. Hutchinson*, 25 A.3d 277, 318-19 (Pa. 2011).

This Court has stated on numerous occasions that "no number of failed claims may collectively warrant relief i[f] they fail to do so individually," *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1150 (Pa. 2012), *quoting Rainey,* 928 A.2d at 245. However, this Court has also acknowledged that "'if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation.'" *Id.*, *quoting Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). As we have found the great majority of appellant's individual claims lack merit, we are satisfied appellant is not entitled to relief based on cumulative prejudice.

## Conclusion

For the foregoing reasons, we hold the PCRA court properly dismissed appellant's petition for PCRA relief following a hearing limited to one issue. Accordingly, we affirm the order denying relief.


Chief Justice Saylor and Justices Baer, Donohue and Mundy join the opinion. Justice Todd and Wecht join the opinion except for Part III.

Justice Wecht files a concurring opinion in which Justice Todd joins.