J-S09044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER KENNEDY | : | |
| | : | |
| Appellant | : | No. 2083 EDA 2019 |

Appeal from the PCRA Order Entered July 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0310461-2003

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                          **FILED JUNE 24, 2020**

Appellant, Christopher Kennedy, appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) that dismissed the portion of his first petition filed under the Post Conviction Relief Act ("PCRA")[1] that challenged his conviction for first-degree murder and other offenses.  After careful review, we affirm.

On July 29, 2004, Appellant was convicted by a jury of first-degree murder, robbery, conspiracy, possession of an instrument of crime, and carrying a firearm on the public streets [2] for fatally shooting a store manager

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541–9546.

[2] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 903, 907(b), and 6108, respectively.

while robbing the store. Appellant was tried with three co-defendants, James Richardson, Jamaar Richardson, and Lavar Brown, all of whom were convicted on the same date of second-degree murder, robbery, conspiracy, and other offenses.

The evidence at trial showed that Appellant was arrested leaving the scene of the murder and robbery with the murder weapon and cash from the store's safe in his possession. Two police officers, Officer McDonnell and his partner, Officer Ewald, were flagged down by a store security guard and arrived at the store while the robbery was in progress. N.T., 7/20/04, at 180-82, 214-16. Officer McDonnell testified that he went to the front of the store and heard a gunshot from inside the store and called out to his partner that there was gunfire. *Id.* at 181-82. Officer Ewald testified that after he heard Officer McDonnell call out that there was gunfire, he looked through the store window and saw Appellant inside the store. *Id.* at 217-19, 227-28. Officer Ewald testified that Appellant was walking toward the front of the store but that after they made eye contact, Appellant ran toward the back of the store. *Id.* at 217-22.

Both officers ran to the back of the store and Officer Ewald radioed for additional police backup. N.T., 7/20/04, at 183, 222. Officers McDonnell and Ewald both testified that a few seconds after they reached the back of the store, they saw Appellant come out of the back of the store with a black revolver in one hand and a trash bag in the other. *Id.* at 184-87, 192, 222-

The officers testified that they ordered Appellant to drop the weapon and that Appellant began to run and dropped the gun. *Id.* at 185, 187, 191-92, 222-24, 260-61. Officers McDonnell and Ewald pursued Appellant, who dropped the trash bag in the street as he continued to flee, and caught him and took him into custody. *Id.* at 185, 192-93, 197-99, 223, 225. Officer McDonnell testified that he retrieved the plastic trash bag that Appellant had dropped after Appellant was apprehended and found that it contained approximately $2,200 in cash. *Id.* at 193-94. Both officers testified they kept an eye on the back door of the store during the chase and that no one else came out the back of the store. *Id.* at 198-99, 225-26.

Officer Anderson responded to Officer Ewald's call for assistance and arrived at the store less than a minute after that call. N.T., 7/21/04, at 23-26. Officer Anderson testified that he found the victim inside the store lying in blood in the manager's office near the safe, with a bullet hole in the side of his head and a leg wound. *Id.* at 26-29, 32-33, 35-42. Officer Anderson further testified that he looked around the store to determine whether anyone else was in the store and saw no one in the store other than the victim. *Id.* at 29-31. The only person other than the victim that police found in the store was a customer who had hidden in the bathroom and called police. *Id.* at 76-77, 81-87.

The gun that Appellant was holding as he left the store was a Ruger .44 caliber revolver. N.T., 7/21/04, at 149-50; N.T., 7/22/04, at 26-27; N.T.,

7/20/04, at 187-88, 227. Three fired cartridge cases were found in that gun. N.T., 7/21/04, at 150-53, 162. A ballistics expert testified that the three cartridge cases were fired in that gun and that the bullet fragments found in the store after the murder that contained markings that could be analyzed were all fired from that gun. N.T., 7/22/04, at 26-27, 46-47, 53-54. A DNA identification expert testified that dried bodily fluid found on the gun matched the victim's DNA profile. *Id.* at 63-67.

The medical examiner who performed an autopsy on the victim opined that the victim was killed by gunshot wounds to his head and his leg. N.T., 7/26/04, at 210-12, 229, 232. The medical examiner testified that the victim's head wound had gunpowder stippling and that this showed that the shot to the head was fired from close range, approximately a foot away. *Id.* at 213-18, 221-23. The victim's leg wound, however, did not show signs of having been fired at close range. *Id.* at 224-25.

The Commonwealth introduced testimony from a number of other witnesses, including the store security guard and a cashier, both of whom ran from the store after they heard a gunshot and identified Appellant as being in the store,[3] the customer who hid in the bathroom, who heard the robber talking to the victim,[4] and two cooperating witnesses, Ronald Vann and Kianna

---

[3] N.T., 7/20/04, at 40, 60-63, 131-36.

[4] N.T., 7/19/04, at 270-84.

Lyons, who testified concerning the planning of the robbery. The Commonwealth also introduced statements that two of Appellant's co-defendants gave to the police as evidence against those co-defendants.

Appellant testified in his defense. In both his testimony and the statement that he gave to the police, which his counsel introduced in evidence, Appellant admitted that he committed the robbery and that he shot the victim in the leg. N.T., 7/27/04, at 165-68, 203-05, 207, 249-53, 289; Ex. D-12. Appellant admitted that after shooting the victim in the leg, he lifted the victim up, took him to the store's safe, had the victim open the safe, and took the money that was in the safe. N.T., 7/27/04, at 167-68, 171, 200-02, 206-10, 212-13, 250-53; Ex. D-12. Appellant also admitted that the gun retrieved by police at the scene that had the victim's bodily fluid on it was his gun and that he had fired it only once before the robbery. N.T., 7/27/04, at 184-85, 196-97.

Appellant denied that he shot the victim in the head and contended that he walked away to leave through the front of the store after taking the money and heard a gunshot and ducked and headed to the back of the store. *Id*. at 168-70, 218-21. Appellant testified, however, that he did not see anyone else in the store or any gun in the store other than the one that he was carrying. *Id.* at 198-99, 202, 208-09, 215-17, 220, 230. Indeed, Appellant admitted on cross-examination that if he found any people in the store, he wanted to shoot them to get rid of witnesses. *Id.* at 223-24. Appellant also denied that

his co-defendants were involved in the robbery and testified that he discussed robbing the store with a person whose name he did not know and that this unidentified person told him the layout of the store. *Id.* at 164-66, 170-72, 186, 191-92, 194-96, 250-53; Ex. D-12.

The jury found Appellant guilty of first-degree murder, robbery, conspiracy, possession of an instrument of crime, and carrying a firearm on the public streets, and, following a penalty phase hearing, set the penalty at death. On November 20, 2008, the Pennsylvania Supreme Court affirmed Appellant's judgment of sentence. *Commonwealth v. Kennedy*, 959 A.2d 916 (Pa. 2008). The United States Supreme Court denied certiorari on May 26, 2009. *Kennedy v. Pennsylvania*, 556 U.S. 1258 (2009).

Appellant timely filed a PCRA petition on August 25, 2009. Between 2009 and 2017, Appellant filed amended PCRA petitions, and on August 11, 2017, the trial court appointed new PCRA counsel for Appellant. On September 18, 2018, Appellant's new PCRA counsel filed the consolidated amended PCRA petition at issue in this appeal. In this PCRA petition, Appellant challenged both his convictions and the penalty phase of his trial. In its response, the Commonwealth opposed Appellant's claims with respect to the guilt-phase portion of his trial, but conceded that Appellant received ineffective assistance of counsel in the penalty phase of his trial. On February 12, 2019, Appellant filed a motion for discovery with respect to claims in his PCRA petition.

On March 11, 2019, following a hearing limited to Appellant's penalty phase claims, the trial court granted the PCRA petition with respect to the penalty phase of Appellant's trial. The Commonwealth did not seek a new penalty hearing, and the trial court, on March 13, 2019, re-sentenced Appellant to life imprisonment for his first-degree murder conviction and to lesser concurrent terms of imprisonment for the other offenses.

On June 5, 2019, the trial court denied Appellant's motion for discovery with respect to the guilt-phase portion of his PCRA petition. The trial court, on June 12, 2019, issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss Appellant's guilt-phase claims without a hearing on the ground that they were without merit, and on July 8, 2019, dismissed the remaining, guilt-phase portion of Appellant's PCRA petition. This timely appeal followed. Because Appellant has been resentenced to life imprisonment, that sentence has not been appealed, and Appellant is therefore not subject to any possibility of a death sentence, this Court has jurisdiction over this appeal. **Commonwealth v. Miller**, 212 A.3d 1114, 1122-23 (Pa. Super. 2019).

Appellant presents 11 issues for review in his brief:

I. Whether the PCRA court erroneously denied Kennedy's **Batson**[5]-ineffectiveness claim when it ignored most of Kennedy's discriminatory-motive evidence and applied a non-cumulative analysis? …

II. When the Commonwealth admits it hid evidence [concerning witnesses Vann and Lyons], which was material to the conviction,

---

[5] **Batson v. Kentucky**, 476 U.S. 79 (1986).

- 7 -

should a new trial be granted? If this evidence could have been discovered, were counsel ineffective?

III. Should a capital defendant be tried jointly with three co-defendants when a good portion of the trial involves separate violent charges for which the capital defendant played no part?

IV. When co-defendants' redacted statements nonetheless identify defendant and when the prosecutor improperly connects the dots to identify defendant, should a new trial be granted?

V. Can a trial court prohibit defendant from consulting with his attorney during recess on the last day of trial when end-of-trial strategy and decisions would be discussed?

VI. Was the court's reasonable doubt jury instruction unconstitutional?

VII. Did counsel ineffectively fail to litigate the improper admission of [Vann's and Lyons'] proffer statements?

VIII. Did counsel unreasonably fail to investigate and present viable guilt-phase defenses based on readily-available facts?

IX. Can the Commonwealth add a conspiracy charge without permission after preliminary hearing? Were counsel ineffective?

X. When petitioner makes necessary, detailed PCRA-discovery requests, should discovery be granted? Can the court postpone ruling on that request to change the governing standard?

XI. Does cumulative prejudice compel relief?

Appellant's Brief at 2.

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its decision is free of legal error. *Commonwealth v. Housman*, 226 A.3d 1249, 1260 (Pa. 2020); *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018); *Miller*, 212 A.3d at 1123. Appellant's first issue and third through ninth issues are all

predicated on claims of ineffective assistance of Appellant's trial and/or appellate counsel, as they involve claims of error that could have been raised at trial and argued on direct appeal. We address these ineffective assistance of counsel issues first and reorder them as follows: we address Appellant's first issue first, followed by his sixth, eighth, and ninth issues, followed by his third through fifth and seventh issues. We then address Appellant's second issue, a claim under **Brady v. Maryland**, 373 U.S. 83 (1963), and his tenth and eleventh issues, concerning PCRA discovery and cumulative prejudice.

## A. Appellant's Ineffective Assistance of Counsel Claims

To be entitled to relief under the PCRA on a claim of ineffective assistance of counsel, the convicted defendant must prove: (1) that the underlying legal claim is of arguable merit; (2) that counsel's action or inaction had no reasonable basis; and (3) that he suffered prejudice as a result of counsel's action or inaction. **Housman**, 226 A.3d at 1260; **Wholaver**, 177 A.3d at 144; **Miller**, 212 A.3d at 1126. The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. **Housman**, 226 A.3d at 1260-61; **Wholaver**, 177 A.3d at 144; **Miller**, 212 A.3d at 1126.

### 1. Appellant's *Batson* Claim

In his first issue, Appellant argues that his trial counsel was ineffective for failure to object to the Commonwealth's use of its peremptory challenges in jury to exclude non-whites and women from his jury in violation of **Batson v. Kentucky**, 476 U.S. 79 (1986). Where, as here, a claim under **Batson** is

not raised at trial and is asserted for the first time in an ineffective assistance of counsel claim in a PCRA petition, the defendant must not merely show that the prosecutor struck jurors of a particular race or gender, but must put forth evidence that the prosecutor engaged in actual, purposeful discrimination. ***Commonwealth v. Rivera***, 199 A.3d 365, 386 (Pa. 2018); ***Commonwealth v. Hutchinson***, 25 A.3d 277, 287 (Pa. 2011); ***Commonwealth v. Ligons***, 971 A.2d 1125, 1142 (Pa. 2009);[6] ***Commonwealth v. Uderra***, 862 A.2d 74, 86-87 (Pa. 2004).[7]

Appellant's claim of discriminatory use of peremptory challenges is based primarily on statistical analyses of the percentages of prospective jurors of different races and genders that the prosecutors struck in this case, comparison of prospective jurors that the prosecutors struck and accepted in this case, and statistical evidence of disproportionate use of peremptory challenges against African-Americans by one of his prosecutors in other cases and by the Philadelphia district attorney's office as a whole. Appellant's jury included at least three African-Americans and seven women, and all of these

---

[6] While a majority of the justices did not join the opinion of the Court in ***Ligons***, all of the justices joined the portion of that opinion concerning the appellant's PCRA ***Batson*** challenge, and the Court's rulings and reasoning on that issue are therefore binding precedent. ***Ligons***, 971 A.2d at 1159 n.1, 1170.

[7] Appellant's contention that he is not required to satisfy this burden is without merit. The United States Supreme Court decisions relied on by Appellant that upheld ***Batson*** challenges all involved challenges to the prosecution's peremptory strikes that were raised at trial.

minority and female jurors were accepted by the prosecutors when the Commonwealth had not exhausted its peremptory strikes. Appellant's Brief at 23-24; N.T., 7/14/04, at 326-27. The charges against Appellant also had no racial issues or overtones; both the murder victim and all defendants were African-American.

In such circumstances, statistical analyses without any proffer of evidence that the prosecutor was motivated by race or gender are as a matter of law insufficient to satisfy the burden in an ineffective assistance of counsel **Batson** claim of showing actual, purposeful discrimination. **Rivera**, 199 A.3d at 386-87 ("showing that a prosecutor struck a greater percentage of minorities than whites is inadequate to prove actual, purposeful, discrimination by a preponderance of the evidence"); **Hutchinson**, 25 A.3d at 287-88 (disproportionate use of peremptory challenges against African-Americans and statistics showing that the prosecutor, who was one of the prosecutors in Appellant's case, had a history of disproportionately striking African-Americans were insufficient to show actual, purposeful, discrimination where jury consisted of 3 African-Americans, 8 whites and 1 person of unknown race); **Ligons**, 971 A.2d at 1142-46 (disproportionate use of peremptory challenges against African-Americans and comparison of prospective jurors that were stricken and accepted were insufficient to show actual, purposeful, discrimination where jury included African-Americans that the prosecutor accepted before exhausting peremptory challenges, there was

no evidence of discriminatory or race-conscious remarks by the prosecutor in that case, and the defendant and victim were of the same race).[8]  Appellant's analyses of the percentages of prospective jurors of different races and genders that the prosecutors struck in this case and other cases and his comparison of prospective jurors struck and accepted in this case are therefore insufficient to satisfy his burden of proof.

Appellant submitted no evidence that any purposeful discrimination occurred in the jury selection for his trial.  The only evidence of discriminatory intent submitted by Appellant consisted of trainings by other prosecutors in the same office in 1987 and 1990, over 10 years earlier.  This evidence of advocacy of discriminatory use of peremptory challenges by other prosecutors in the same office years before Appellant's trial is insufficient to show actual, purposeful, discrimination by the prosecutors in his case.  *Rivera*, 199 A.3d at 385-87 & n.14; *Hutchinson*, 25 A.3d at 288-89; *Uderra*, 862 A.2d at 82, 87.  Indeed, our Supreme Court has specifically held that the identical training evidence was insufficient to show discrimination by the same prosecutor who

_____

[8] Neither *Commonwealth v. Edwards*, 177 A.3d 963 (Pa. Super. 2018), nor *Commonwealth v. Jackson*, 562 A.2d 338 (Pa. Super. 1989) (*en banc*), supports Appellant's contention that such evidence is sufficient to satisfy his burden here.  Both of those cases involved review on direct appeal of *Batson* claims that were the preserved at trial, not the showing that the defendant must make on a PCRA ineffective assistance of counsel *Batson* claim. *Edwards*, 177 A.3d 968-69; *Jackson*, 562 A.2d at 341.

was one of the prosecutors at Appellant's trial. **Hutchinson**, 25 A.3d at 288-89.

The lone item of evidence submitted by Appellant concerning the decision-making of either of the prosecutors in his case consists of testimony of one of those prosecutors concerning the reasons for his peremptory challenges in an unrelated 1997 murder trial. Evidence from an unrelated case tried years before is insufficient to show discrimination in the selection of Appellant's jury. **Ligons**, 971 A.2d at 1145 (judicial ruling that prosecutor had violated **Batson** in another trial years earlier and notes from that and another trial were insufficient to show discrimination in jury selection for defendant's trial). Moreover, nothing in that transcript shows discriminatory intent or deliberate racial or gender-based exclusion of jurors on the part of that prosecutor. To the contrary, that transcript shows that the prosecutor was himself African-American and that he disagreed with the training tape on which Appellant relies that advocated discriminatory use of peremptory challenges, calling it "insulting" and "an abomination." Docket Entry No. 34, Appellant's Reply in Support of PCRA Petition Ex. 5 at 94-97.

Because the evidence proffered by Appellant was insufficient to show that the prosecutors engaged in purposeful discrimination in their exercise of peremptory challenges in the jury selection in his case, the trial court did not err in denying Appellant's **Batson** claim without a hearing.

## 2. Appellant's Sixth, Eighth, and Ninth Issues

These three claims all fail because Appellant cannot satisfy the first requirement of a claim of ineffective assistance of counsel, that the claim have arguable merit.

In his sixth issue, Appellant argues that trial counsel was ineffective for failing to object to the trial court's instruction that "[a] reasonable doubt is the kind of doubt that would cause a reasonably careful and sensible person to pause or hesitate or refrain before acting on a matter of the highest importance in his or her own affairs, or to his or her own interests."  N.T., 7/28/04, at 182.  Contrary to Appellant's assertions, this instruction does not limit reasonable doubt to doubts that would cause a person to refrain from acting; rather, it is in the disjunctive and specifically instructs the jury that a reasonable doubt also exists if it would cause a person to pause or hesitate before acting.  *Uderra*, 862 A.2d at 92.  Such an instruction therefore does not constitute reversible error.  *Id.*; *Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa. Super. 2007).  Because the instruction did not constitute reversible error, Appellant's trial counsel cannot be found ineffective for failure to object.  *Uderra*, 862 A.2d at 92.

In his eighth issue, Appellant argues that trial counsel was ineffective in failing to investigate two defenses, diminished capacity and the contention that there was a second shooter.  Diminished capacity, however, was not available as a defense in this case.  The law is clear that diminished capacity

- 14 -

can be asserted as a defense only where the defendant admits that he killed the victim. **Commonwealth v. Tharp**, 101 A.3d 736, 756 (Pa. 2014); **Hutchinson**, 25 A.3d at 312–14; **Commonwealth v. Birdsong**, 24 A.3d 319, 333 (Pa. 2011).

> A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill. "Absent an admission from the defendant that he had shot and killed the victim, trial counsel could not have presented a diminished capacity defense." If a defendant does not admit that he killed the victim, but rather advances an innocence defense, then evidence on diminished capacity is inadmissible.

**Hutchinson**, 25 A.3d at 312 (citations, brackets, and footnote omitted) (quoting **Commonwealth v. Spotz**, 896 A.2d 1191 (Pa. 2006)). Appellant in his testimony at trial specifically denied killing the victim. N.T., 7/27/04, at 168-70. Because Appellant denied killing the victim, even though that denial was implausible, his trial counsel could not assert a diminished capacity defense and therefore cannot be found ineffective to failure to investigate or present such a defense. **Tharp**, 101 A.3d at 756; **Hutchinson**, 25 A.3d at 312–14; **Birdsong**, 24 A.3d at 333.

Appellant's claim that his trial counsel was ineffective for failure to investigate and present evidence of a second shooter likewise fails. Appellant does not point in his brief to any evidence of a possible second shooter in the store at the time of the murder that could have been uncovered and presented if counsel had conducted an additional investigation. Rather, the support for

- 15 -

this claim that Appellant cites in his brief consists largely of evidence that was in fact presented at trial. Appellant's Brief at 49-54, 83.[9] To the extent that Appellant claims that his trial counsel did not pursue this defense at trial, it is contradicted by the trial transcript, which demonstrates that Appellant's trial counsel argued to the jury that the evidence supported the conclusion that the victim was killed by another person who was in the store. N.T., 7/28/04, at 78-84, 86-87.

In his ninth issue, Appellant argues that trial counsel was ineffective for failing to move to dismiss the conspiracy charge that the Commonwealth filed against him. This claim is based on the fact that the charges that had been filed against Appellant at the time of his preliminary hearing on March 12, 2003 included first-degree murder, robbery, possession of an instrument of crime, and carrying a firearm on the public streets, but did not include conspiracy, and that the conspiracy charge was added by an information filed after the preliminary hearing.

_____

[9] To the extent that Appellant attempts to incorporate his consolidated amended PCRA petition by reference in this and his other arguments, Appellant's Brief at 9, 14-15, 22-24, 35, 37, 43 n.16, 44-46, 82-83, such incorporation is improper and the incorporated material is not to be considered by this Court. **Housman**, 226 A.3d at 1264; **Commonwealth v. Briggs**, 12 A.3d 291, 342-43 (Pa. 2011). We, accordingly, address only the arguments made in Appellant's briefs in this Court and the evidence supporting those arguments that Appellant has referenced in his briefs in this Court and do not consider matters set forth only in Appellant's consolidated amended PCRA petition or other trial court pleadings or briefs.

Where the defendant is fully aware of the additional charge well in advance of trial and the charge has not been specifically rejected as lacking in probable cause, the Commonwealth is permitted to file an amended information that sets forth a new charge against the defendant arising out of the same set of events subsequent to the defendant's preliminary hearing. *Commonwealth v. Sinclair*, 897 A.2d 1218, 1222-24 (Pa. Super. 2006) (amendment to add different driving under the influence charge permitted on day of trial where defendant did not show that timing of new charge prejudiced him); *Commonwealth v. Fuller,* 579 A.2d 879, 883, 885 (Pa. Super. 1990) (Commonwealth permitted to amend information to add different, aggravated assault charge immediately prior to trial where timing of amendment did not prejudice defendant's ability to defend); *Commonwealth v. Womack*, 453 A.2d 642, 646 (Pa. Super. 1982) (Commonwealth permitted to amend information to add conspiracy charge on day of trial where defendant was aware of conspiracy charge long before trial).

The purpose of Pa.R.Crim.P. 564's  limitations on the Commonwealth's power to amend an information "is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Roser*, 914 A.2d 447, 453 (Pa. Super. 2006) (quoting *Sinclair*).   If there is no showing of such prejudice, amendment of an

information to add an additional charge is proper even on the day of trial. *Sinclair*, 897 A.2d at 1224.

Here, the information adding the conspiracy charge was filed on March 28, 2003, over a year and three months before Appellant's trial. Docket Entry No. 25, Fourth Supplemental Amended PCRA Petition Ex. 5. Appellant therefore had ample notice of the conspiracy charge and the allegations on which it was based and could not have been prejudiced by the timing of the Commonwealth's information that added this charge.[10] Given the absence of prejudice from the timing of the addition of the conspiracy charge, a motion to dismiss that charge would not have succeeded in removing that charge from the case, and Appellant's trial counsel cannot be found ineffective for failing to file such a motion. *Womack*, 453 A.2d at 646.

### 3. Appellant's Third, Fourth, Fifth, and Seventh Issues

Appellant's remaining claims of ineffective assistance of counsel all fail, regardless of whether the underlying claims of error have any merit, because Appellant cannot prove prejudice. To prove prejudice, Appellant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Commonwealth v. Jones*, 210

---

[10] Indeed, although conspiracy was an additional charge, it did not change the nature of the more serious first-degree murder charge or the robbery and other charges against Appellant, as those charges were based on Appellant's own actions of committing the robbery and killing the victim, not on the acts of his co-defendants.

A.3d 1014, 1018-19 (Pa. 2019); **Hutchinson**, 25 A.3d at 285.  A reasonable probability of a different result sufficient to show prejudice is a probability sufficient to undermine confidence in the outcome.  **Jones**, 210 A.3d at 1019; **Commonwealth v. Postie**, 200 A.3d 1015, 1023 (Pa. Super. 2018) (*en banc*).  This inquiry "requires consideration of the totality of the evidence" at Appellant's trial.  **Postie**, 200 A.3d at 1023 (quoting **Commonwealth v. Spotz**, 870 A.2d 822 (Pa. 2005)).

Appellant's third, fourth, and seventh issues all involve alleged errors with respect to evidence admitted at trial or that affected the evidence at trial.  In his third issue, Appellant argues that the joinder of his case with his three co-defendants was error and that his appellate counsel was ineffective for failing to raise this issue on appeal.  Appellant contends that as a result of the joinder, evidence was admitted of an attempted robbery of the same store the day before in which he was not involved and that the statements of two of his co-defendants to the police and testimony concerning another out-of-court statement by one of those co-defendants were admitted in evidence.  In his fourth issue, Appellant argues that his trial and appellate counsel were ineffective with respect to the admission of the statements of two of his co-defendants to the police and the alleged insufficiency of the redaction of the references to him in those statements.  In his seventh issue, Appellant asserts that his trial and appellate counsel were ineffective with respect to the

admission of prior consistent statements of the cooperating witnesses Vann and Lyons.

None of the above items provided any evidence of Appellant's guilt that was significant in comparison to the other evidence that Appellant committed the robbery and murder. The earlier robbery in which Appellant was not involved did not provide any evidence on the issue of whether Appellant killed the store manager in this robbery. Moreover, it could not have made the jury think worse of Appellant, as Appellant not only was not implicated in that other robbery, but admitted committing a similar crime and a worse crime in his testimony, a robbery and an unprovoked shooting of the victim. Given Appellant's own admissions, there is no basis to conclude that evidence of this crime in which Appellant was not involved had any effect on the jury's verdict. *Housman*, 226 A.3d at 1262-63.

Appellants' co-defendants' statements were redacted to remove Appellant's name. Even if the redactions in James Richardson's statement were insufficient and the jury understood them to refer to him, that statement only implicated Appellant in the robbery and conspiracy to rob the store and placed him at the store when the robbery and murder were committed. N.T., 7/26/04, at 146-58. Jamaar Richardson, who worked at the store, said in his statement that he told "a couple of the guys" about the money in the store's safe, how many people would be in the store, and how to close the front gate and exit the back of the store, and that he knew they were planning to rob

the store. *Id.* at 269-78. Jamaar Richardson also stated that he was told by Lyons that "one of the guys" was caught by the police, and that when the others came back, he knew they had robbed the store because they were all dressed in black clothes. *Id.* at 272, 274.

Appellant testified that he robbed the store, shot the victim in the leg, was in the store when the second shot was fired, and was caught by the police, and that he discussed robbing the store before he went in, albeit with someone whom he did not identify rather than his co-defendants. N.T., 7/27/04 at 164-69, 171-72, 205, 207, 250-57; Ex. D-12. James and Jamaar Richardson's statements thus added no evidence of guilt beyond what Appellant admitted and cannot show a reasonable probability that the jury's verdict as to Appellant would have been different in their absence. While Jamaar Richardson did say that he knew who killed the victim, his redacted statement referred to that person only as someone who "lives in my neighborhood in the projects." N.T., 7/26/04 at 270. His redacted statement thus did not identify Appellant as the murderer or provide evidence that Appellant shot the victim in the head.

The testimony of James and Jamaar Richardson's cousin concerning a statement that James Richardson made to another person at her house likewise did not provide any evidence of Appellant's guilt beyond the facts that he admitted and that were thoroughly established by other witnesses whose testimony was not challenged in this PCRA petition. Although this witness

initially stated that she overheard James Richardson say that the robbery was "fucked up" and that "they didn't even get a chance to get anything because [Appellant] killed the guy," N.T., 7/26/04 at 92-93, she testified later that what she heard James Richardson say was that Appellant "shot" the person and that "I never heard no one got killed." *Id.* at 123, 129-30. In addition, it was clear from this witness's testimony that James Richardson's statement concerning what Appellant did was based solely on the fact that he heard a gunshot and saw Appellant come running out of the store. *Id.* at 104, 123. As it was undisputed that Appellant shot the victim and ran out of the store after the second, fatal gunshot, there is no reasonable likelihood that this testimony affected the jury's verdict.

The portions of Vann's and Lyons' prior consistent statements that were read at trial also did not provide any evidence concerning the commission of the murder. In his prior statement, Vann stated that Appellant was armed with a .44 caliber gun, that Appellant's "job was to go in the store, grab the manager guy, take him to the safe and get the money," and that Appellant went to the store. N.T., 7/22/04, at 347-56. Vann also stated that when they were outside the store, co-defendant James Richardson said that Appellant had "grabbed the manager," and that Lyons later reported that Appellant "shot him and they caught [Appellant] coming out the back." *Id.* at 355-56. Lyons stated in her prior statement that it was discussed in planning the robbery that Appellant "was supposed to give the manager a leg shot" and that at the

time of the robbery, she went to the store with Appellant, Vann and co-defendants James Richardson and Lavar Brown, and that Appellant had a gun. N.T., 7/26/04, at 62-69. Lyons' statement further stated that she went in the store and phoned one of Appellant's co-defendants reporting who was in the store, that she saw Appellant go into the store as she was leaving the store, and that as she was walking home, she saw the police arrive and arrest Appellant as he ran out the back of the store. *Id.* at 64-65. Appellant in his testimony admitted all of these facts in Vann's and Lyons' statements – that he went into the store armed with a .44 caliber gun and shot the store manager in the leg, and that he had his hands on the manager, took the manager to the safe, and got money from the safe. Nothing in Vann's or Lyons' statements asserted that they or anyone else saw Appellant shoot the victim a second time in the head.

The fact that the prior statements and the co-defendants' statements bolstered Vann's and Lyons' credibility likewise does not show prejudice. As in their statements, neither Vann nor Lyons testified at trial that Appellant shot the victim in the head or that they were present in the store when the murder occurred. Rather, as in their prior statements, these witnesses testified that they were not in the store at that time and testified concerning the planning of the robbery, the start of the robbery, and Appellant's arrest. Their testimony with respect to Appellant's actions only established at most that Appellant was armed, went into the store to commit the robbery, robbed

the store, and was caught by the police.  N.T., 7/19/04, at 112-30, 154, 172; N.T., 7/22/04, at 118-30, 139-46, 148-58, 177-84, 189-90.

In his trial testimony and prior statement to police, Vann did also state that before the robbery Appellant said that "the manager guy give him anything, he going to kill him" and "Look, Man, if the dude get out of pocket and don't want to give it up, I am going to kill him."  N.T., 7/22/04, at 143, 356-57.[11]  Appellant contends that these statements were critical to show the intent required to sustain Appellant's first-degree murder conviction.

That argument is without merit.  The victim was shot in the head at close range.  That by itself is sufficient to prove first-degree murder. The firing of a gun at a vital part of another's person's body in and of itself is sufficient to prove specific intent to kill beyond a reasonable doubt.  ***Commonwealth v. Brown***, 987 A.2d 699, 705 (Pa. 2009); ***Commonwealth v. Padgett***, 348 A.2d 87, 88 (Pa. 1975).  Moreover, Appellant's own testimony showed that he intended to kill anyone who interfered with his robbery, as he admitted that he intended to shoot anyone that he found in the store to eliminate witness. N.T., 7/27/04, at 223-24.  Contrary to Appellant's assertions, the fact that the jury asked rehear the trial court's instructions on second-degree and third-degree murder and a portion of Appellant's testimony, N.T., 7/29/04, at 3,

---

[11] Lyons testified that she never heard any of the defendants talk about killing anyone in the robbery or shooting anyone anywhere other than in the leg. N.T., 7/19/04, at 161.

- 24 -

does not show that it considered convicting Appellant of any lesser degree of homicide. Appellant's co-defendants were charged with second-degree murder and the portion of Appellant's testimony that the jury requested was his testimony "with regard to his relationship to the other defendants," not his testimony concerning his actions in the store. *Id.* at 3, 43.

In addition, any impact from those statements by Vann on the issue of whether Appellant was the person who committed the murder was dwarfed by the evidence that he did fire the fatal shot. Appellant's presence at the scene when the murder was committed was undisputed and it was undisputed that he was carrying a gun that had the victim's bodily fluid on it, consistent with the close-range shot to the victim's head. Indeed, the number of fired cartridges in Appellant's gun confirmed that it was used to fire both shots at the victim, as Appellant testified that he had only fired one shot from that gun before he shot the victim in the leg and there were three fired cartridges in the gun. The police testimony established that Appellant was walking toward the front of the store after the second shot was fired and that there was no one in the store other than Appellant and a frightened customer who was hiding in a bathroom. Appellant admitted that he did not see anyone else in the store at the time that the victim was shot in the head or after that fatal shot was fired.

Given the overwhelming evidence that Appellant committed the murder and the fact that none of the testimony and statements of which he complains

provided evidence that he committed the murder, Appellant's third, fourth and seventh issues fail because he has not shown that these alleged errors alone or in combination caused him prejudice.

In his fifth issue, Appellant alleges that trial counsel was ineffective in failing to adequately preserve an objection when the trial court prohibited his counsel from consulting with him over a lunch recess that occurred between his re-direct and re-cross-examination. We need not determine whether the trial court erred in prohibiting this consultation, because Appellant has not shown that this ruling had any effect on his trial. There is nothing in the record to support a finding that any consultation was prevented by the trial court's ruling. Appellant's trial counsel specifically informed the court that he had "no intention of" discussing the case with his client during the break and wanted to speak with him only after the conclusion of his testimony. N.T., 7/27/04, at 262-64. Indeed, the record shows that Appellant at trial was refusing to communicate with his counsel concerning trial strategy. N.T., 7/12/04, at 8-9. More importantly, trial counsel was in fact permitted to consult with Appellant before the trial resumed. N.T., 7/27/04, at 264-65, 268, 280; Trial Court Opinion at 29.

## B. Appellant's *Brady* Claim

In his second issue, Appellant argues that he is entitled to a new trial because the Commonwealth failed to disclose evidence that would have impeached the testimony of Vann and Lyons. Under the United States

Supreme Court's decision in **Brady**, a defendant's right to due process is violated when the prosecution withholds material evidence that is favorable to him. **Brady**, 373 U.S. at 87; **Commonwealth v. Weiss,** 81 A.3d 767, 783 (Pa. 2013); **Miller**, 212 A.3d at 1124. To establish a **Brady** violation, the defendant must prove all of the following three elements: (1) that the evidence at issue is favorable to him, either because it is exculpatory or because it impeaches; (2) that the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) that he was prejudiced. **Weiss,** 81 A.3d at 783; **Commonwealth v. Spotz,** 47 A.3d 63, 84 (Pa. 2012); **Miller**, 212 A.3d at 1124.

The element of prejudice requires that the defendant show that there is a reasonable probability that, if the evidence had been disclosed to the defense, the result of the proceeding would have been different. **Wholaver**, 177 A.3d at 158; **Weiss,** 81 A.3d at 783. A reasonable probability of a different result is a probability sufficient to undermine confidence in the outcome. **Weiss,** 81 A.3d at 783-84; **Spotz,** 47 A.3d at 84. Accordingly, where the undisclosed evidence is solely impeachment evidence, the defendant must demonstrate that the testimony of the witness who would have been impeached could well have been determinative of the defendant's guilt or innocence **Weiss,** 81 A.3d at 784.

As was discussed above, neither Vann's nor Lyons' testimony was determinative of Appellant's guilt or innocence. Neither of these witnesses

provided evidence on the disputed issue of whether Appellant fired the second shot into the victim's head. Moreover, the evidence from police and forensic witnesses and Appellant's own testimony overwhelmingly pointed to the conclusion that Appellant fired that fatal shot, in addition to robbing the store and shooting the victim in the leg. None of that evidence could have been affected by impeachment of Vann or Lyons.

In addition, the Commonwealth's failure to produce the evidence did not leave Vann's or Lyons' credibility unchallenged. It was clear at trial without the suppressed evidence that Vann and Lyons had strong incentives to accuse Appellant and his co-defendants to save themselves.

Vann admitted that there was a pending charge against him for another robbery and a drug charge to which he had pleaded guilty but had not been sentenced. N.T., 7/22/04, at 158, 291-92. Although he testified on direct and re-direct examination that he had received no deal in exchange for his testimony, he admitted that he hoped that it would help him with his other cases. *Id*. at 168-69, 171, 337. Moreover, Vann testified on cross-examination that he wanted favors from the police and that he wanted to get out of jail, wanted leniency for his open cases, and wanted to avoid prosecution for this murder and robbery. *Id*. at 232, 248-51, 290. Vann specifically admitted that he wrote a letter to one of the detectives investigating this murder and robbery stating the following:

> I wanted to know how was everything working out with this case.
> I went to Homicide on 2/28/03. I did not tell them nothing. You

said you was going to get me out of jail so I can be home with my family if I helped you out please can you help me. I have helped you 100 percent now can you help me 100 percent. I am at Graterford but can you please write me back and let me know what's going on and did you make that deal for me and please tell your partner I said hi.

*Id.* at 225-30. Vann further admitted that he wrote to the detective again referencing a "deal" and that he had lied to the police multiple times. *Id.* at 160-63, 220-24, 236-37, 247-48.

Lyons admitted at trial that the prosecution promised her, in exchange for her testimony, that she would not go to jail for the robbery and murder and that she understood that she would not be charged if she satisfied the prosecutors. N.T., 7/19/04, at 150-51, 160. Lyons also testified that a detective had threatened to charge her with murder and robbery, that her lawyer had told her that she could be charged with murder and robbery and faced a possible sentence of death or life imprisonment, that she was not charged with any crime arising out of this robbery murder, and that she was trying to help herself with her testimony. *Id.* at 155-60, 179-81, 197.

Because the evidence that Appellant murdered the victim came from other witnesses, not from Vann or Lyons, and that evidence of Appellant's guilt was overwhelming without considering their testimony, there is no reasonable probability that additional impeachment of Vann or Lyons would have had any effect on the guilty verdicts against Appellant. Accordingly, the trial court correctly denied relief on Appellant's *Brady* claim.

## C. Denial of PCRA Discovery

In his tenth issue, Appellant argues that the trial court erred in denying his February 12, 2019 motion for PCRA discovery. Our review on this issue is limited to determining whether the trial court abused its discretion in denying the requested discovery. *Commonwealth v. Edmiston*, 65 A.3d 339, 353 (Pa. 2013); *Commonwealth v. Lark*, 746 A.2d 585, 591 (Pa. 2000); *Commonwealth v. Watley*, 153 A.3d 1034, 1048 (Pa. Super. 2016).

Because Appellant was resentenced to life imprisonment and is no longer subject to the risk of a death sentence in this case, this matter is not a death penalty case. Appellant's discovery requests are therefore governed by Pa.R.Crim.P. 902(E)(1).[12] Rule 902(E)(1) provides that in a PCRA proceeding, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1).

The claims on which Appellant asserts that he was entitled to discovery are his ineffective assistance of counsel *Batson* claim, his *Brady* claim

_____

[12] Appellant's contention that the trial court acted improperly in not ruling on the discovery requests until after the penalty phase hearing is without merit. Although this PCRA proceeding had been pending for over nine years, Appellant filed the motion for discovery approximately three weeks before the hearing on the penalty phase portion of the PCRA petition and set forth numerous discovery requests in that motion, most of which related to the guilt-phase portion of his PCRA petition. Given the lateness of Appellant's filing, it was completely proper for the trial court to defer ruling on guilt-phase discovery issues that did not need to be resolved before the hearing on Appellant's penalty phase claims.

concerning impeachment evidence with respect to witnesses Vann and Lyons, and his ineffective assistance of counsel claims concerning diminished capacity and the possibility of a second shooter. The trial court did not abuse its discretion in concluding that Appellant did not show exceptional circumstances that would permit such discovery.

Discovery concerning Appellant's *Brady* claim and the issue of diminished capacity could not have any effect on the PCRA proceeding because these claims fail regardless of any additional evidence. As is discussed above, additional impeachment evidence concerning Vann and Lyons cannot satisfy the requirement of prejudice because those witnesses provided no testimony that Appellant committed the murder and the defense of diminished capacity was unavailable to Appellant because he denied killing the victim.

With respect to Appellant's *Batson* and second shooter claims, Appellant showed nothing exceptional about his trial or the evidence concerning the murder and robbery that demonstrated that PCRA discovery on these issues was particularly warranted in his case. The composition of Appellant's jury was in fact diverse. Appellant points to nothing in the record that suggests that documents exist that show discriminatory intent in the selection of that jury or that any undiscovered evidence exists supporting his second shooter argument.[13] Mere speculation that there may be evidence in

---

[13] Indeed, Appellant sets forth nothing in his brief supporting his argument for discovery concerning his second shooter defense. *See* Appellant's Brief at 95.

the Commonwealth's possession that might support the defendant's PCRA claim does not constitute a showing of exceptional circumstances as required by Rule 902(E)(1). *Lark*, 746 A.2d at 591 (Rule 902(E)(1) does not permit the defendant to conduct a "fishing expedition" for evidence to support his PCRA claims); *Commonwealth v. Dickerson*, 900 A.2d 407, 412 (Pa. Super. 2006).

### D. Cumulative Prejudice

In his final issue, Appellant contends that even if none of his PCRA claims is sufficient, the cumulative effect of those alleged errors requires that he be granted a new trial. That argument is without merit.

Cumulative prejudice may only be considered with respect to claims have been rejected due to lack of prejudice. *Hutchinson*, 25 A.3d at 319. "[N]o number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Sherwood*, 982 A.2d 483, 507 (Pa. 2009) (quoting *Commonwealth v. Washington*, 927 A.2d 586 (Pa. 2007)). Appellant's *Batson* claim, his claims concerning the trial court's reasonable doubt instruction, trial counsel's failure to pursue defenses, and the addition of a conspiracy charge, and his discovery claim all fail on the merits, not on the ground that Appellant was not prejudiced. None of these claims therefore can support a claim of cumulative prejudice.

The only claims as to which we have held that Appellant failed to show prejudice are his *Brady* claim and his third, fourth, fifth and seventh claims

of error. Even if Appellant showed error on all of these issues, the combined effect would not satisfy the requirement that Appellant show prejudice.

With respect to Appellant's fifth claim, concerning consultation with counsel, Appellant failed to show that the trial court's ruling had any effect at all on his trial, as the record showed that the trial court in fact permitted Appellant's trial counsel to consult with him before the trial resumed. Because the alleged error had no effect, it cannot add anything to the other claims that Appellant asserts.

With respect to the other four claims, as we have already discussed, Vann's and Lyon's testimony, their prior statements, and the evidence admitted against the other defendants did not provide any significant evidence on the issue of whether Appellant killed the victim. What this evidence showed with respect to Appellant was that he went into the store with a gun to rob it, shot the victim in the leg, robbed the store, and was caught by the police as he was leaving the store. Those facts were all admitted by Appellant in his statement to the police and his testimony. In addition, as we have discussed, the evidence that Appellant committed the murder, from the gun, Appellant's presence at the scene, the implausibility of Appellant's testimony, and the absence of evidence that there was any other person who could have fired the fatal shot, was overwhelming. Thus, even if there were error with respect to all of the above four issues, there is no reasonable likelihood that that such

errors in combination affected the outcome of the guilt-phase portion of Appellant's trial.

For the foregoing reasons, we conclude that Appellant has not shown any error or abuse of discretion by the trial court. Accordingly, we affirm the trial court's order denying Appellant's PCRA petition.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *6/24/2020*